## TERRY BRUCE CREPS, Appellant, v. THE STATE OF NEVADA, Respondent.

No. 9798

June 28, 1978                                          581 P.2d 842

[Rehearing denied July 26, 1978]

*John Ohlson, Jr.,* of Reno, for Appellant.

*Larry R. Hicks,* District Attorney, and *John L. Conner,* Deputy District Attorney, Washoe County, for Respondent.

## OPINION

*Per Curiam:*

Terry Creps has appealed from his conviction and sentence

for the sale of a controlled substance, alleging four errors: (1) that his motion to suppress a quantity of cocaine purchased by an undercover police agent was improperly denied; (2) that his motion to dismiss, based upon an allegedly improper continuance granted to the State, was improperly denied; (3) that the trial court relied upon improper evidence in determining the sentence to be imposed, and (4) that the trial court exceeded both its constitutional and statutory powers when it imposed as a condition of probation a term of sixty days in the county jail. For the reasons that follow, we affirm both his conviction and the validity of the sentence imposed upon him.

1. *The Motion to Suppress*

Creps was arrested by officers of the Reno Police Department upon a prearranged signal from an undercover agent to whom Creps had just sold a quantity of cocaine. This agent had previously arranged with a third party to be introduced to Creps, met him at his residence where an agreement to buy was struck, and returned two hours later, wired for sound, with $1,000.00 in marked bills to consummate the sale. Creps argues that upon these facts, his motion to suppress the purchased cocaine, based upon the absence of a warrant, was improperly denied.

Creps' Fourth Amendment argument must fall under the authority of Lewis v. United States, 385 U.S. 206 (1966)[1] and its progeny. Under *Lewis,* a government agent may properly pose as a willing buyer to gain consensual entry into a private home to purchase narcotics, and thereafter use the purchase as evidence against the seller without vitiating an otherwise lawful prosecution. United States v. Raines, 536 F.2d 796, 799 (8th Cir. 1976). An agent's misrepresentation of his identity does not render invalid the seller's consent to the entry. As stated in United States v. Glassel, 488 F.2d 143, 145 (9th Cir. 1973), *cert. den.* 416 U.S. 941 (1974):

> "[A]n officer may legitimately obtain an invitation into a house by misrepresenting his identity. . . . If he is invited inside, he does not need probable cause to enter, he does not need a warrant, and, quite obviously, he does not need to announce his authority and purpose."

Further, when a purchase of an illegal substance has been consummated after a consensual entry obtained through misrepresentation of identity, there has occurred neither a search

---

[1]Lewis v. United States, *supra,* was cited with approval on a related point in Crown v. Sheriff, 85 Nev. 522, 458 P.2d 357 (1969). However *Crown* does not deal with the particular constitutional challenge presented in this case.

for nor a seizure of the contraband. United States v. Dono, 428 F.2d 204, 209 (2nd. Cir.), *cert. den. sub nom,* Bonaguro v. United States, 400 U.S. 829 (1970). Creps "willingly entered into the transaction meaning it to be what it was, an illegal sale . . . to a willing buyer." *Id. See also,* State v. Hollins, 533 S.W. 2d 231, 233 (Mo.App. 1975); State v. Leppenen, 453 P.2d 172 (Ore. 1969). The purchased cocaine was therefore not inadmissible under the Fourth Amendment.

2. *The Motion for Continuance*

Trial was originally scheduled for Monday, December 6, 1976. On Friday, December 3, the State filed a motion for continuance, alleging the unavailability of an essential witness, the undercover police agent. Over Creps' objection, the motion was granted. On January 3, 1977, Creps' motion to dismiss the proceedings against him, based upon the allegedly improper grant of the State's motion for continuance, was denied.

District Court Rule 21 requires that a motion for continuance be supported by an affidavit stating:

> "(a) The names of the absent witnesses and their present residences, if known.
>
> (b) What diligence has been used to procure their attendance or their depositions, and the causes of a failure to procure the same.
>
> (c) What the affiant has been informed and believes will be the testimony of each of such absent witnesses, and whether or not the same facts can be proved by other witnesses. . . .
>
> (d) At what time the applicant first learned that the attendance or depositions of such absent witnesses could not be obtained.
>
> (e) That the application is made in good faith and not for delay merely."

Under DCR 21(3), "no continuance will be granted unless the affidavit upon which it is applied for conforms to this rule. . . ."

The State's affidavit offered in support of its Dec. 3 motion for continuance is set out in the margin below.[2] Analysis of this

---

[2]"RICHARD L. DAVENPORT, being first duly sworn, deposes and says: 1. That he is a Deputy District Attorney of Washoe County, State of Nevada, and attorney for the Plaintiff, THE STATE OF NEVADA, in the above-entitled action; 2. That the defendant has been charged with the crimes of Sale of a Controlled Substance and Possession of a Controlled Substance, felonies, and that a jury trial is now set for Monday, December 6, 1976 at the hour of 10:00 a.m.; 3. That ........ ........ is a crucial witness in the above described trial and that only she can testify to those events that transpired between her and a TERRY CREPS; 4. That your affiant received a telephone call from the said

affidavit under DCR 21 reveals the following possible deficiencies: (a) no address is given for the agent, although the agent's present whereabouts is given; (b) the description of the probable content of the agent's testimony is decidedly vague: the "events that transpired between her and Terry Creps," which only the agent could testify to, are not set forth in detail.

In applying the requirements of DCR 21 at the appellate level, we have held that "[t]here is no presumption that good cause [for a continuance] exists . . . and the burden of showing good cause for delay is on the prosecution. Ex Parte Morris, 78 Nev. 123, 125, 369 P.2d 456 (1962)." McNair v. Sheriff, 89 Nev. 434, 436, 514 P.2d 1175 (1973). Nonetheless, we went on in *McNair* to observe at 89 Nev. 438:

> "[O]ur aim being that criminal accusations should proceed or terminate on principles compatible with judicial economy, fair play, and reason, we have attempted to apply DCR 21 in the criminal realm firmly, consistently, but realistically."

In keeping with this policy of interpretation, we held in Rainsberger v. State, 76 Nev. 158, 160, 350 P.2d 995 (1960), that it is within the discretion of the trial court to grant a motion for a continuance upon the support of an affidavit "not in strict compliance with Rule 21 . . . upon the showing that the application for continuance was made in good faith and not merely for delay." *See also,* Giorgetti v. Peccole, 69 Nev. 76, 241 P.2d 199 (1952).

When viewed in the light of the chain of events leading to the filing of the motion for continuance, the affidavit's deficiencies are clearly of the type which the trial court, acting within the scope of its discretion under *Rainsberger,* might well choose to overlook. The record reveals that the Deputy District Attorney first became aware that the agent would be unable to travel at 1:20 p.m. on the Friday preceding a Monday 10:00 a.m. trial date. The motion and supporting affidavit were filed one hour later, after a hurried conference in chambers with the trial judge and Creps' attorney, during which the Deputy District Attorney was instucted by the judge to "hurry and get some papers up so we'[ll] have some sort of written record here."

---

.......... ......... at approximately 1:20 p.m. on December 3, 1976; 5. At this time your affiant was informed by .......... ......... of the following: A) She had entered a hospital in Little Rock, Arkansas on Monday, November 29, 1976, and therein underwent abdominal surgery; B) That the said .......... ......... was released on Thursday, December 2, 1976 from said hospital; C) That .......... ......... was informed by her physician, DR. SELBY, that she is not to engage in travel for a period of three to four weeks; That your affiant believes that this Motion is made for good cause and there has never been a continuance previously in this case; and that said Motion is not made for the purposes of delay."

Upon the filing of the motion and affidavit, a hearing was held, at which the Deputy District Attorney offered to be sworn, and orally supplemented the affidavit with a more complete description of the agent's anticipated testimony and a description of a telephone call he had made to the agent's doctor in Arkansas to verify the agent's condition.

Clearly, the record reveals that the Deputy District Attorney acted with all possible dispatch. Moreover, the deviations from the dictates of DCR 21 are both explainable under the particular circumstances of the motion and not of the type which would prejudice the defendant or subject him to avoidable delay. The court did not err in granting this continuance.

3.  *The Evidence Supporting the Sentence*

Creps was sentenced to five and one-half years in the Nevada State Prison, suspended, probation for a period of five years conditioned upon payment of a fine, submission to warrantless searches, and a term of incarceration of sixty days in the Washoe County Jail. The trial judge apparently fashioned this sentence with the thought "in the back of [his] mind" that Creps "was heavily involved in drug traffic." Creps argues that because there was no admissible evidence of other transactions in which he had participated and no evidence of any other contraband at his residence, the trial judge must have relied upon "impalpable or highly suspect evidence", in violation of Silks v. State, 92 Nev. 91, 94, 545 P.2d 1159 (1976).

However there was ample evidence properly admitted at the trial for the judge to have concluded that Creps, although a first offender, was more than a casual seller. The transaction for which he was prosecuted involved an ounce of cocaine with a street value of $1,800 and an offer to sell 10,000 amphetamines. Creps offered to do business on a regular basis. Upon this evidence, we find no abuse of discretion in the trial judge's sentence. Silks v. State, *supra*.

4.  *The validity of the 60-Day Term of Incarceration as a Condition of Probation*

Under NRS 176.185(1), it is within the power of the trial court to "suspend the execution of the sentence imposed and *grant probation to the convicted person as the judge thereof deems advisable.*" In granting probation, "the court may *fix the terms and conditions thereof,*" NRS 176.185(3), and is authorized to "impose . . . *any* conditions of probation or suspension of sentence." NRS 176.205. (Emphasis supplied.) Despite the ostensibly unlimited nature of the power granted to the trial court to set conditions, Creps argues that a term of

incarceration in the county jail is beyond the power of the trial court to impose as a condition of probation.[3]

Creps' challenge to the validity of the use of a short term of incarceration as a condition of probation is essentially twofold: first, that the imposition of such a condition impermissibly impinges upon the pardon and parole powers of the Executive Branch; and second, that even if no such constitutional conflicts arise from the imposition, a term of incarceration is so fundamentally inconsistent with the concept of probation as to have been beyond the scope of permissible conditions contemplated by the Legislature in enacting the sentencing scheme embodied in NRS Ch. 176.

a. Creps bases his "executive power conflict" argument on the authority of our holding in State v. District Court, 85 Nev. 485, 457 P.2d 217 (1969). In that case, we held it to be beyond the trial court's original sentencing power to suspend the execution of a ten-year prison sentence and place the convicted defendant on three years probation, conditioned upon serving two years in the Nevada State Prison. Such a sentence, we held, constituted in effect a "delayed parole", 85 Nev., *supra,* at 487, in derogation of the Legislature's specific allocation of the parole power to the Executive Branch. It was also suggested in *State v. District Court* that such a sentence might impinge upon the Executive's pardon power. 85 Nev., *supra,* at 487.

Despite the broad language of State v. District Court, *supra,*[4] it is clear that the power to alleviate a sentence (probation/parole/commutation) and the power to vacate an underlying conviction (honorable discharge from probation/pardon)

---

[3]Even though there exists no specific authority for its use, Nevada district courts have apparently long assumed that a term of incarceration in the county jail is within the range of permissible conditions available to them in granting probation. In the recent study entitled "Comparative Analysis of Nevada Law, Rules, and Practice With the A.B.A. Standards of Criminal Justice," (1975), it is stated without supporting case law authority that "a sentencing judge may place a defendant upon probation conditioned upon his serving a stated period of time up to one year in the county jail." *Id.,* at 150.

Despite the apparent absence of any judicial doubt as to its propriety, incarceration appears to be seldom imposed as a condition of probation in Nevada. Records of the Identification and Communication Division of the Nevada Department of Law Enforcement Assistance reveal that of the 1,293 probations granted in Nevada district courts during the first three quarters of FY 1977–78, only fourteen were conditioned upon a term of incarceration in the county jail.

[4]*In State v. District Court,* we quoted with approval the following excerpt from the 1916 case Ex Parte United States, 242 U.S. 27: "[T]he right to relieve from punishment, fixed by law and ascertained according to the methods by it provided, belongs to the executive department." Despite this language, the precise holding in *State v. District Court* is considerably narrower: that "the granting of any relief from punishment *after incarceration in the state prison* is an executive function . . . performed by the state board of parole commissioners . . . or by the state board of pardons commissioners." 85 Nev., *supra,* at 488. (Emphasis supplied.)

are to a large extent dually allocated by the Legislature pursuant to constitutional mandate between the Judicial and Executive branches of state government in overlapping fashion.[5] In *State v. District Court* we merely held that there do exist certain situations in which the Legislature could not have intended, because the Constitution did not permit, that the judicial and executive commutation powers should overlap, certain situations in which the power to alleviate a sentence is committed exclusively to one branch. The "parole power", we held in that case, was just such an exclusively-delegated power; once a person is incarcerated in the state prison and is subject to the power of the executive parole board, *see,* NRS 213.107–290, the power to alleviate the sentence rests entirely with the executive branch.[6]

However when, as here, a convicted defendant is subjected as a condition of probation to a term of incarceration of sixty days in the county jail, there occurs no possible conflict with the exclusively-executive parole power such as existed in *State v. District Court.* First, in order to come within the scope of the executive parole power, a person must first have served at least one year in confinement. NRS 213.120. A term of incarceration

---

[5]Thus at the time of his sentencing, a convicted defendant is subject *both* to the judicial power to commute his sentence through probation and the executive commutation power exercised by the pardons board. *See,* NRS 176.185 and 213.010–100. Once on probation, he is again subject both to the judicial commutation power to terminate probation, *see*, NRS 176.215, and the executive commutation power exercised through the pardons board, *see,* NRS 213.010–100. Further, a fine imposed by the sentencing court may be alleviated at any time either by the court (NRS 176.085) or by the pardons board (NRS 213.060).

The power to vacate an underlying judgment of conviction (the "pardon" power) is also jointly allocated between the court (NRS 176.225, "honorable discharge from probation") and the executive (NRS 213.090).

This dual allocation of commutation and pardon powers between the judicial and executive branches of state government finds its constitutional basis in the 1950 amendment of Article 5, Section 14 of the Nevada Constitution. *See,* Stats. Nev. 1947, p. 875; Stats. Nev. 1949, p. 684. Prior to 1950, these powers were constitutionally confined to the Governor under Article 5, Section 13, or to the Governor acting in conjunction with the Attorney General and the Justices of the Supreme Court under Article 5, Section 14. *See,* State v. Moran, 43 Nev. 150, 182 P. 927 (1919). The 1950 constitutional amendment authorized the Legislature to confer "upon the district courts authority to suspend the execution of sentences, fix the conditions for, and to grant probation. . . ."

[6]The sentence imposed by the trial court in *State v. District Court* is not directly prohibited under the Nevada Revised Statutes or the Nevada Constitution. See A IV. However the absence of any direct and explicit authority *for* such overlapping parole and probation powers, in light of the direct authority existing in the NRS and the Constitution for *other* overlapping commutation powers (see footnote 5, *supra.*), and in light of the direct prohibition of *post-incarceration* remedial action by the court, (*see,* 176.185(3)), supports the conclusion in *State v. District Court* that no overlap was constitutionally or statutorily intended between the judicial probation and executive parole powers.

of 60 days is thus not within those sentences the parole board has the power to touch. Further, while former NRS 176.190 (now 176.095) and NRS 213.110 (similarly codified after its amendment) both allowed the board of parole commissioners to grant parole to a person in the county jail, parole may now be granted only to persons confined in the Nevada state prison. *See,* Stats. Nev. 1969, Ch. 345, p. 598, A.B. 543 amending NRS 213.110. *See also,* Minutes, Senate Judiciary Committee, April 9, 1969, State Archives Book 30, p. 390; Minutes, Assembly Judiciary Committee, March 19, 1969, State Archives Book 22, p. 155. As stated in *State v. District Court,* the executive parole power comes into effect ''after incarceration in the state prison,'' and not before. 85 Nev., *supra,* at 488.

We conclude, therefore, that the imposition of a term of incarceration of sixty days in the county jail as a condition of probation does not represent a judicial intrusion into the exclusively-executive parole power. Moreover, to the extent that Creps is also subject during his term of incarceration to the executive commutation power under NRS 213.090, such overlapping commutation powers are clearly contemplated under the sentencing scheme set forth in Chapters 176 and 213 of the Nevada Revised Statutes and Article 5 of the Nevada Constitution.

b. Creps finally argues that even if a 60-day term of conditional incarceration suffers from no constitutional infirmity, the use of incarceration as a condition is so fundamentally inconsistent with the concept of probation that we must conclude it to be beyond the scope of permissible conditions contemplated by the Nevada Legislature in enacting NRS 176.185 and 176.205. He has cited us to a series of recent cases in which the courts of other states have concluded that the condition should not be permitted unless specifically authorized by statute. State v. Harris, 251 N.W. 2d 483 (Iowa 1977); State ex rel. St. Louis County v. Stussie, 556 S.W. 2d 186 (Mo. 1977); State v. Marshall, 247 N.W. 2d 484 (S.D. 1976); State v. Nuss, 212 N.W.2d 565 (Neb. 1973); People v. Ledford, 477 P.2d 374 (Colo. 1970); State v. Van Meter, 440 P.2d 58 (Ariz.App.) rev. den. (1968); White v. Burke, 43 F.2d 329 (10th Cir. 1930). The propriety of the use of incarceration as a condition of probation has been much debated; we note the contrary line of cases upholding its use in the absence of statutory prohibition. State v. Jones, 327 So.2d 18 (Fla. 1976); State ex rel. Woodbury v. District Court, 495 P.2d 1119 (Mont. 1972); Franklin v. State, 392 P.2d 552 (Idaho 1964); Tabor v. Maxwell, 194 N.E.2d 856 (Ohio 1963); Breeding v. Swenson, 60 N.W.2d 4 (Minn. 1953);

U.S. ex rel. Spellman v. Murphy, 217 F.2d 247 (7th Cir. 1954); Moore v. Patterson, 26 S.E.2d 319, 147 A.L.R. 653 (S.C. 1943).

The power to suspend sentence and grant probation springs from legislative grant rather than from the inherent powers of the court. State v. District Court, *supra;* State v. Abbott, 70 S.E. 6 (S.C. 1911); *but see,* State v. Jones, *supra.* Thus the primary enquiry in determining the range of permissible conditions under Ch. 176 must be the original and continuing legislative intent as reflected in the language of the enacted legislation. Further, the particularly ameliorative nature of probation statutes compels a liberal interpretation of the discretionary powers conferred on the district courts, Franklin v. State, *supra,* especially when, as here, there exists no danger of judicial intrusion into exclusively-executive realms. *See,* State v. District Court, *supra,* at 487[7]. Our analysis of the language and background of Ch. 176 reveals no compelling reason to conclude that the legislature intended to exclude incarceration from the change of permissible conditions of probation.

First, the language of NRS 176.185 and 176.205, as originally enacted in 1951,[8] fails to reveal any legislative attempt to circumscribe or define the discretionary sentencing powers conferred on the district court. On the contrary, the legislative history of A.B. 207 reveals that the Probation Act was amended in the Senate specifically to *exclude* any legislative delineation of the options available to the district court, *see* Journal of the Senate, 1951, p. 343,[9] and to confer instead a broad and virtually unlimited discretion on the court to fashion sentencing

---

[7]In State v. District Court, *supra,* we held that when there *did* exist a danger of interbranch jurisdictional conflict, the "statutory power [to suspend sentence] must be strictly construed." 85 Nev. at 487.

[8]The district courts were first granted constitutional suspension and probation powers in 1951. Stats. Nev. 1951, ch. 320, p. 527. An earlier statute authorizing the district court to "direct that . . . sentence be staid and suspended and that the defendant be released from custody on such conditions as the court may impose until otherwise ordered by such court" (Revised Laws of Nevada, 1912, vol. 2, § 7259, p. 2034) was declared unconstitutional in State v. Moran, 43 Nev. 150, 182 P. 927 (1919). The Court held that although the statute had been widely relied upon by Nevada district courts since its enactment, it was in direct conflict with Article 5, § 14 of the Nevada Constitution, which delegated all pardon and commutation powers to the Governor acting alone or in conjunction with the Attorney General and the Justices of the Supreme Court. 43 Nev., *supra,* at 153. Article 5, § 14 was amended in 1950 to authorize the Legislature to confer suspension and probation powers on the district courts. *See,* Stats. Nev. 1947, p. 875; Stats. Nev. 1949, p. 684; note 5, *supra.*

[9]As originally proposed in and passed by the Assembly, A.B. 207 permitted the court to "(1) place the defendant on probation, or (2) impose a fine applicable to the offense and also place the defendant on probation, or (3) suspend the imposition or the execution of sentence." Journal of the Senate, 1951, p.

dispositions according to the needs of the particular defendant. As enacted, A.B. 207 authorized the district court to "grant such probation . . . *as the judge . . . shall deem advisable,"* and conferred on the court *"full power to fix the terms and conditions thereof."* See, NRS 176.185.[10] Further, the court is authorized to "impose . . . *any* conditions of probation." *See,* NRS 176.205. Clearly, such broad language compels no automatic exclusion of a short term of incarceration in the county jail from the range of alternatives available to the district court.

Moreover, we do not believe the inclusion of a term of incarceration in the county jail within the set of permissible conditions available to the district courts under NRS 176.185 and 176.205 to run counter to any persuasive policy arguments advanced by courts in other jurisdictions. Creps cites us to many recent cases in which the argument is made that "probation" and "incarceration" of any sort or for any duration are fundamentally inconsistent concepts, the latter being both

343. In White v. Burke, 43 F.2d 329 (10th Cir. 1930), former 18 U.S.C. 724, a section of the former Federal Probation Act substantially identical to A.B. 207 in its initial form, was construed not to allow the use of incarceration as a condition of probation. The court held that while the "broad language" of the first alternative disposition, standing alone, might well be construed to allow the condition, the specific enumeration of the lesser power to impose a fine as a condition of probation revealed a legislative intent to proscribe the more onerous condition of incarceration.

> "It is altogether unlikely that Congress would expressly give the power to require the payment of a fine and to place the defendant on probation, and leave to implication the power to require a serving of a portion of a term of imprisonment. . . . The grant of express power to impose the lesser punishment . . . excludes the power to impose the greater punishment . . . as a condition of probation."

43 F.2d, supra, at 330. *See also,* United States v. Greenhaus, 85 F.2d 116, 107 A.L.R. 630 (2nd Cir.), *cert. den.* 299 U.S. 596 (1936); Archer v. Snook, 10 F.2d 567 (D.C. Ga. 1926); People v. Robinson, 235 N.W. 236 (Mich. 1931). *But see,* U.S. ex rel. Spellman v. Murphy, 217 F.2d 247 (7th Cir. 1954); Moore v. Patterson, 26 S.E.2d 319, 147 A.L.R. 653 (S.C. 1943). The amendment of A.B. 207 to a form involving no legislative enumeration of permissible conditions renders these cases inapplicable in the interpretation of NRS Chapter 176.

Although NRS Ch. 176 was amended in 1969 and 1975 specifically to allow for the use of narcotics tests and restitution as conditions of probation, *see,* NRS 176.187, 176.189, the legislative history of NRS 176.189 reveals that it was designed only to "clarify" to the district courts the extent of their "inherent powers" under NRS Ch. 176 to impose probationary conditions. *See,* Journal of the Senate, 1975, pp. 55–56.

[10]NRS 176.185(3) was amended in 1975, resulting in the deletion of the phrase "shall have full power to" and the substitution therefor of the word "may". *See,* Stats. Nev. 1975, 84. We attach no importance to this minor change in language.

■

semantically inconsistent with the former,[11] and antithetical to its rehabilitative goals.[12] Even discounting the factual and other peculiarities of several of these cases,[13] we remain unconvinced by their logic.

Whatever the "semantic content" of the term "probation" may once have been,[14] it can no longer be argued convincingly that "probation" necessarily involves an immediate release from incarceration. Through statutory amendment specifically to permit the imposition of incarceration as a condition of probation,[15] case law interpretation of statutes which, like NRS 176.185 and 176.205, do not specifically enumerate a list of

[11]Thus it is often stated that probation and confinement "constitute a contradiction," State v. Harris, 251 N.W.2d 483 (Iowa 1977), and that incarceration in the county jail as a condition of probation "is the passing of a sentence, and not the suspension thereof. The fact that the court terms it a condition of probation does not render it any less a sentence of imprisonment." State v. Van Meter, 440 P.2d 58, 64 (Ariz.App.) (rev. den. 1968). *See,* Best and Birzon, "Conditions of Probation: An Analysis", 51 Geo.L.J. 809, 829 (1963): "Probation is based upon the premise that the offender has been found fit to re-enter society. . . . There is simply no way to reconcile incarceration to this premise."

[12]Policy arguments most often advanced against the use of incarceration as a condition include (a) that the shortness of the term of incarceration precludes the establishment of an institutional rehabilitative treatment plan, (b) that local jails, in which such terms are usually served, are "typically poor" facilities; (c) that a short term of incarceration has the adverse effect of separating the convicted person from the rehabilitative influences of his family and community; and (d) that such a separation might well induce hostility on the part of the prisoner. *See,* "Seminar & Institute on Disparity of Sentences for the Sixth, Seventh, and Eighth Judicial Circuits," (1961) 30 F.R.D. 401, 445–459; State v. Marshall, 247 N.W.2d 484 (S.D. 1976).

[13]In State ex rel. St. Louis County v. Stussie, 556 S.W.2d 186 (Mo. 1977), for example, the court construed a long-standing statute placing no apparent limits on permissible conditions after the enactment, but before the effective date, of a new probation statute specifically authorizing the use of incarceration as a condition. In State v. Marshall, *supra,* at f.n. 12, the applicability of the probation statute exclusively to first offenders appears to have provided the basis for the court's holding that probation was designed as "an alternative to confinement." 247 N.W.2d, *supra,* 487.

[14]The alleged contradiction between probation and any form of custodial detention appears to find its source in U.S. v. Murray, 275 U.S. 347, 357 (1928), where the Court, in dictum, characterized probation as "amelioration of the sentence by delaying actual execution, or providing a suspension so that the stigma might be withheld and an opportunity for repentance be granted *before actual imprisonment* should stain the life of the convict." (Emphasis supplied.)

[15]The federal probation statute construed in White v. Burke, *supra,* f.n. 9, not to permit the use of incarceration was amended in 1958, Pub. L. No. 85–741, "to permit confinement in a jail-type institution . . . for a period not exceeding six months in connection with the grant of probation. . . ." Senate Report No. 2135, 1958 U.S.C.C.A.N., v. II, p. 3841. *See,* 18 U.S.C. 3651. California has long permitted the imposition of up to six months as a condition of probation. *See,* California Penal Code, § 1203.1. After State v. Van Meter, *supra,* f.n. 11, the Arizona probation statute was amended to allow the imposition of up to one year as a condition of probation. *See,* State v. Evans, 512 P.2d 1225 (Ariz. 1973).

permissible conditions,[16] and scholarly commentary,[17] "probation" has come to signify less a necessary and immediate release from custody than a carefully tailored program of rehabilitation, potentially involving a short term of incarceration, judicially fashioned to suit the needs and character of a particular convicted person.

Moreover, we perceive no conflict between the essentially rehabilitative goals of the Nevada probation statutes and the use of a short term of incarceration as a condition thereof. That a short and definite term of confinement imposed as a condition of probation may have a substantial rehabilitative effect in certain cases has come to be widely recognized. *See,* Franklin v. State, *supra,* 392 P.2d 361–365, concurring and dissenting opinion. Significantly, both the A.B.A. "Project on Minimum Standards for Criminal Justice; Sentencing Alternatives and Procedures" (§ 2.4(a)(iii) Appr. Draft 1968) and the A.L.I. Model Penal Code (§ 6.02(3), alternative draft) specifically permit the imposition of a term of incarceration as a term of probation. The particular advantages in preserving its availability as a sentencing alternative are best described in one of the Workshop conclusions reached at the "Seminar & Institute on Disparity of Sentences for the Sixth, Seventh, and Eighth Judicial Circuits," (1961), 30 F.R.D. 401, 445:

> "Many judges thought [conditioning probation upon a term of incarceration under 18 U.S.C. 3651] an appropriate disposition . . . because it combined the deterrent effect of imprisonment and achieved a 'shock treatment' of defendants who are unaware of the seriousness of their offense, retaining the advantages of probation where longer incarceration would serve no useful purpose."

*See also,* Franklin v. State, *supra,* 392 P.2d at 562. We believe that a short term of incarceration imposed as a condition of probation may in certain cases play a beneficial role in the rehabilitation of a convicted person, and that such a condition has a useful and proper place in the range of sentencing alternatives available to the district court under NRS 176.185 and 176.205.

Affirmed.

---

[16]Perhaps the most comprehensive treatment of the evolution of the concept appears in the concurring and dissenting opinion of Justice McQuade in Franklin v. State, *supra,* 392 P.2d at 561–565. Speaking for a majority of the Supreme Court of Idaho on the propriety of conditional incarceration, Justice McQuade declined to "restrict the meaning of probation so that it could never encompass incarceration. While such a restriction might have seemed reasonable twenty or thirty years ago, it is rapidly becoming apparent in this dynamic area of the law that probation signifies the employment of any reasonable measures which may be used to effectuate the rehabilitation of the defendant." 392 P.2d, *supra,* 562.

[17] Best and Birzon, *supra,* at f.n. 11; "Seminar & Institute", *supra,* f.n. 12;

---

Herlands, "When and How Should a Sentencing Judge Use Probation," Institute on Sentencing for U.S. District Court Judges (1964) 35 F.R.D. 381, 503; *Note,* "Judicial Review of Probation Conditions," 67 Colum.L.R. 181, 184–185 (1967).