EL PUEBLO DE PUERTO RICO, peticionario, *v.* ADALBERTO VEGA VÉLEZ, acusado y recurrido.

*Número:* CE-87-282 *Resuelto:* 23 de enero de 1990

---

*Rafael Ortiz Carrión, Procurador General, Norma Cotti Cruz, Subprocuradora General,* y *Josefa A. Román García, Procuradora General Auxiliar,* abogados de El Pueblo; *Luis A. Amorós,* abogado del recurrido.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El presente recurso nos brinda la oportunidad de resolver si los jueces de instancia, al dictaminar que un convicto cualifica para recibir los beneficios de la Ley de Sentencia Suspendida,[1] tienen la facultad para imponer como condi-

---

[1] Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. secs. 1026–1029.

ción de la sentencia la reclusión del convicto en una institución penal por una parte del término fijado en la misma. En otras palabras, determinamos en el día de hoy la procedencia jurídica en nuestra jurisdicción de lo que comúnmente se conoce como una sentencia suspendida "fraccionada o mixta".

## I

Con motivo de unos hechos ocurridos en la noche del 15 de abril de 1983, en jurisdicción de Cayey, Puerto Rico, resultó gravemente herido de bala el joven Frank Ricardo Martínez Cruz. En relación con dichos hechos, el Ministerio Fiscal radicó acusaciones ante el Tribunal Superior de Puerto Rico, Sala de Guayama, por los delitos de encubrimiento, mutilación, perjurio, daños agravados e infracciones a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, 25 L.P.R.A. secs. 416 y 418, contra tres (3) agentes de la Policía de Puerto Rico.[2] Llamados los casos para el acto del juicio, los agentes del orden público hicieron alegación de culpabilidad, solicitando que sus casos fueran referidos, para la correspondiente evaluación e informe al tribunal, a la oficina de oficiales probatorios.

Llegado el día del acto de imposición de sentencia, el foro de instancia le concedió los beneficios de una sentencia suspendida al teniente Negrón Burgos y al policía Haddock Dones, *no así al aquí recurrido Vega Vélez*. Este último fue condenado a tres (3) y a cinco (5) años de prisión por infracción a los Arts. 6 y 8 de la Ley de Armas de Puerto Rico, *supra*, respectivamente; seis (6) años por cada uno de los tres (3) cargos de perjurio; cinco (5) años por el delito de daños agravados, y ocho (8) años por el delito de mutilación. Dispuso el tribunal de instancia que las sentencias habrían

---

(2) Teniente Daniel Negrón Burgos, el policía Jorge Haddock Dones y el aquí recurrido, Sargento Adalberto Vega Vélez.

de cumplirse en forma concurrente excepto en el caso del delito de mutilación, donde la sentencia debería cumplirse en forma consecutiva con las demás para un total de catorce (14) años.

Posteriormente ese mismo día, sin embargo, el tribunal enmendó la sentencia para que se incluyera como "condición especial" que el convicto cumpliera cinco (5) años en una institución penal "y una vez cumplido dicho término podrá ser considerado para los beneficios de una sentencia suspendida". Mediante moción de reconsideración de fecha 16 de mayo de 1986, el Ministerio Público solicitó del tribunal que eliminara la referida condición de la sentencia y ordenara la reclusión del convicto por el término total de la sentencia aduciendo que dicha condición era ilegal. Igualmente compareció el convicto recurrido en moción de reconsideración de sentencia. Éste, por su parte, también alegó que en nuestra jurisdicción un tribunal no puede dictar una sentencia fraccionada según la dictada por el tribunal; sostuvo, sin embargo, que habiendo sido el informe del oficial probatorio favorable, debió habérsele concedido la suspensión de la sentencia por la totalidad del término de la misma, según se contempla en la Ley de Sentencia Suspendida y según le fuera ésta concedida a los demás policías.

Luego de haber celebrado una vista con el propósito de escuchar los distintos planteamientos de las partes, el día 30 de enero de 1986 el foro de instancia emitió una "Resolución y Sentencia Enmendada" en la cual resolvió los dos (2) planteamientos que, a su juicio, estaban ante su consideración; esto es: primero, si tenía facultad en ley para dictar sentencias "fraccionadas" y, segundo, si debía "mover su discreción [para] conceder al convicto los beneficios de la ley de sentencias suspendidas". *Exhibit* I, pág. 2.

Siguiendo la máxima legal *in eo quod plus sit, semper inest et minus*,(3) concluyó que si la ley en cuestión le facultaba para suspender la sentencia por el período total fijado en la misma, era lógico suponer que lo facultaba para suspenderla en parte. Expresó, además, que siendo la rehabilitación del convicto el propósito principal del estatuto, no había razón para que no pudiera imponer, como condición para la probatoria, la reclusión por un período determinado si ello resulta en la consecución de ese fin. En cuanto al segundo planteamiento, esto es, si debía conceder al convicto una sentencia suspendida, el tribunal tras "repasar varios aspectos del caso y sus circunstancias para hacer un balance justiciero con miras a lograr la rehabilitación del convicto", reconsideró la sentencia impuesta reduciendo el período de reclusión de cinco (5) a dos (2) años y dispuso que, cumplido el mismo, el convicto gozaría de los beneficios de la Ley de Sentencia Suspendida por el balance del tiempo restante a cumplir, doce (12) años. El tribunal dispuso, además, que transcurridos los primeros sesenta (60) días desde que el convicto empezara a disfrutar de la libertad a prueba, debería éste pasar mensualmente, por concepto de restitución, doscientos (200) dólares al perjudicado con el propósito de ayudarlo a sufragar los gastos médicos en que éste viene obligado a incurrir debido a la condición física resultante de los actos delictivos cometidos por el recurrido y los otros dos (2) agentes del orden público.

Inconforme, acudió el Procurador General de Puerto Rico ante este Tribunal, imputándole error al tribunal de instancia al así resolver. En el recurso de *certiorari* que radicara sostiene, en síntesis, que un juez de instancia única-

---

(3) Se traduce: "En lo que es más está siempre comprendido también lo que es menos". Esta máxima tiene su origen en el Digesto de Justiniano. Véase Dr. I.L. García Del Corral, *Cuerpo del Derecho Civil Romano*, Barcelona, Imprenta de Redondo y Xumetra, 1897, T. III, pág. 953.

mente tiene facultad para dictar una sentencia como la aquí recurrida si el estatuto en cuestión expresamente lo permite, no siendo esa la situación de nuestra Ley de Sentencia Suspendida. Cita el Procurador General, en particular y en apoyo de su posición, una opinión del Secretario de Justicia de Puerto Rico de fecha 18 de febrero de 1986.[4] Expedimos el auto de *certiorari* solicitado. Estando en condiciones de resolver el recurso, procedemos a así hacerlo.

## II

La idea básica tras el mecanismo de la sentencia suspendida es sumamente sencilla: lograr que un convicto de delito viva una vida productiva en la sociedad, alejado del trasiego delictivo, bajo un sistema de supervisión. La sentencia suspendida es una alternativa beneficiosa en casos apropiados, tanto para el convicto como para la sociedad. La concesión de una sentencia suspendida a un convicto de delito "evita los efectos negativos en el individuo que la reclusión tan frecuentemente produce, minimiza el impacto de la reclusión sobre los dependientes y familiares del convicto, preserva la libertad del delincuente sin sacrificar el interés social en la prevención y corrección del crimen, y promueve afirmativamente la rehabilitación del delincuente al permitirle mantener contactos sociales normales pero condicionados en la comunidad. *A.B.A. Advisory Committee on Sentencing and Review: Standards Relating to Sentencing Alternatives and Procedures* Secs. 1–2 (1976)". *Pueblo v. Esmurria Rosario*, 117 D.P.R. 884, 887 (1986), voto particular de la Juez Asociada Señora Naveira de Rodón.

Desde el punto de vista del Estado, la concesión de una sentencia suspendida tiene el efecto de permitir que

---

[4] Como es sabido, las opiniones que emite el Secretario de Justicia de Puerto Rico *no* son obligatorias para los tribunales de justicia. *Meléndez Ortiz v. Valdejully*, 120 D.P.R. 1 (1987).

el individuo beneficiado por la misma se sostenga a sí mismo, representando ello una economía sustancial, ya que el tratamiento en libertad a prueba resulta menos costoso que mantener a la persona recluida en una institución penal. Informe Especial sobre Derecho a la Vida, la Seguridad y la Libertad Personal Frente a los Problemas de la Delincuencia de 20 de marzo de 1968, pág. 551, preparado por la Comisión de Derechos Civiles. No debe perderse de vista, en adición, el hecho de que dicho mecanismo contribuye a resolver el serio problema de hacinamiento carcelario, el cual se ha agravado en los últimos años.

■ Conforme al concepto tradicional, la sentencia suspendida es una alternativa disponible en casos apropiados para *evitar* la encarcelación. Por ello se entendía que la imposición de un período de reclusión era incompatible con la libertad a prueba. Sin embargo, ya no se considera que un término de encarcelación sea necesariamente inconsistente con la concesión de una sentencia suspendida, pues se enfatiza el propósito rehabilitador de la misma y se sostiene que un término de reclusión puede en algunos casos promover el fin que persigue este mecanismo. Esta es la posición que sostienen las autoridades modernas.[5]

Hoy día es práctica muy común en otras jurisdicciones conceder una sentencia suspendida sujeta a que la persona cumpla una parte del término de la sentencia en una institución penal. Son muchos los estados de la Unión Norteamericana que específicamente han legislado para incluir un período de reclusión entre las condiciones que puede un juez prescribir al conceder la suspensión de los efectos de una

---

[5] Véase N.P. Cohen y J.J. Cobert, *The Law of Probation and Parole*, Colorado, McGraw-Hill, 1983, págs. 240–241, donde se resumen los argumentos esgrimidos por aquellos que favorecen la imposición de esta condición y aquellos que se oponen.

sentencia.(6) En la jurisdicción federal también se ha incluido un término de encarcelación entre las condiciones que el juez tiene facultad para imponer al suspender la ejecución de una sentencia.(7)

Resulta pertinente resaltar el hecho de que tribunales de otras jurisdicciones estatales, donde no existe una disposición estatutaria específica que autorice expresamente un período de encarcelación como condición para suspender los efectos de una sentencia, han resuelto que aquellas *disposiciones generales* de la ley que permiten a un juez imponer las condiciones que crea convenientes o necesarias para la probatoria *le facultan* para fijar esta condición. Véanse: *State v.*

---

(6) Véase N. Parisi, *Combining Incarceration and Probation,* 44 (Núm. 2) Federal Probation 3 (1980). En este trabajo se señala que para enero de 1980 los siguientes estados habían legislado específicamente para incluir un período de encarcelación entre las condiciones que un juez puede imponer al suspender los efectos de una sentencia: Arizona, Arkansas, California, Colorado, Hawaii, Indiana, Iowa, Kentucky, Louisiana, Michigan, Minnesota, Montana, Nebraska, Nevada, Carolina del Norte, Oregon, Dakota del Sur, Texas, Washington y Wisconsin.

*La mayoría de los estatutos aprobados establecen un período máximo de encarcelación que fluctúa generalmente entre treinta (30) días y un (1) año.* Así, por ejemplo, Arizona establece un período máximo de un (1) año (Ariz. Rev. Stat. Ann. Sec. 13–901(E)); Hawaii de seis (6) meses para delitos menos graves y un (1) año para delitos graves (Haw. Rev. Stat. Sec. 706–624(3)); Kentucky de seis (6) meses (Ky. Rev. Stat. Ann. Sec. 533–030(5) (Michie 1985)); Michigan de un (1) año (Mich. Comp. Laws Ann. Sec. 771.3(2)(a) (West 1982)); Washington de un (1) año (Wash. Rev. Code Sec. 9.95.210 (1988)); Texas de treinta (30) días para delitos menos graves (Tex. Code Crim. Proc. Ann. Art. 42.12, Sec. 6B (Vernon 1979)). El Código Penal Modelo Art. 301.1(3) establece un máximo de treinta (30) días.

(7) En 1958 la Ley Federal de Sentencia Suspendida conocida como *The Probation Act,* 18 U.S.C. sec. 3651, fue enmendada para permitir la suspensión de los efectos de una sentencia en forma fraccionada con la limitación de que el período de encarcelación no podría exceder de seis (6) meses.

La Sec. 3651 fue recientemente derogada por Pub. L. 98–473, Title II, Sec. 212(a)(1), (2) de 12 de octubre de 1984 (*Sentencing Reform Act*).

Esta ley dispone en lo pertinente: "(b) *DISCRETIONARY CONDITIONS.* —The court may provide, as further conditions of a sentence of probation . . . that the defendant . . . (11) remain in the custody of the Bureau of Prisons during nights, weekends, or other intervals of time, totaling no more than the lesser of one year or the term of imprisonment authorized for the offense, [in section 3581(b)] during the first year of the term of probation." 18 U.S.C. sec. 3563.

*Jones,* 327 So. 2d 18 (Fla. 1976); *State v. Wagenius,* 581 P.2d 319 (Idaho 1978); *State v. Maldonado,* 578 P.2d 296 (Montana 1978); *Creps v. State,* 581 P.2d 842 (Nev. 1978), *cert.* denegado 439 U.S. 981 (1978); *Tabor v. Maxwell,* 194 N.E.2d 856 (Ohio 1963); *State v. Eichler,* 483 P.2d 887 (Utah 1971).[8]

Es preciso señalar, sin embargo, que otras jurisdicciones estatales, a pesar de reconocer lo beneficioso que podría resultar un período de reclusión en algunos casos en que se concede la probatoria, han adoptado una posición contraria resolviendo que no puede imponerse esta condición en ausencia de una disposición estatutaria que específicamente lo autorice. Estos tribunales han resuelto que siendo la probatoria, por definición, la libertad condicional sin encarcelación, resulta ser inconsistente la imposición de un período de reclusión como condición de la misma. Véanse: *Boyne v. State,* 586 P.2d 1250 (Alaska 1978); *People v. Ledford,* 477 P.2d 374 (Colo. 1970); *Franklin v. State,* 392 P.2d 552 (Idaho 1964); *People v. Pickett,* 305 N.E.2d 551 (Ill. 1973); *Stone v. State,* 405 A.2d 345 (Md. Ct. Spec. App. 1979); *State ex rel. St. Louis County v. Stussie,* 556 S.W.2d 186 (Mo. 1977); *State v. Nuss,* 212 N.W.2d 565 (1973); *State v. Marshall,* 247 N.W.2d 484 (S.D. 1976).[9]

---

[8] En *Creps v. State,* 581 P.2d 842, 850 (Nev. 1978), el Tribunal Supremo de Nevada expresó, en lo pertinente, que:

"Whatever the 'semantic content' of the term 'probation' may once have been, it can no longer *be argued convincingly that 'probation' necessarily involves an immediate release from incarceration.* Through statutory amendment specifically to permit the imposition of incarceration as a condition of probation, case law interpretation of statutes which, like NRS 176.185 and 176.205, do not specifically enumerate a list of permissible conditions, and scholarly commentary, *'probation' has come to signify less a necessary and immediate release from custody that a carefully tailored program of rehabilitation, potentially involving a short term of incarceration, judicially fashioned to suit the needs and character of a particular convicted person."* (Énfasis suplido y escolios omitidos.)

[9] En *People v. Ledford,* 477 P.2d 374, 375 (Colo. 1970), el Tribunal Supremo de Colorado expresó:

## III

■ No hay duda de que una lectura de la terminología contenida en algunas de las disposiciones de la Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 L.P.R.A. secs. 1026–1029, puede producir la impresión de que le asiste la razón al Procurador General de Puerto Rico al sostener que la referida ley no autoriza la concesión de una sentencia suspendida fraccionada.([10]) Dicha terminología, sin embargo, no

---

"By its very nature and definition, probation means and signifies liberty under certain imposed conditions. Its basic purpose is to provide a program which offers an offender the opportunity to rehabilitate himself without confinement.

. . . . . . . .

"When an accused is granted probation, he is also granted his liberty and freedom from confinement in a jail or penitentiary. Unless there is specific statutory authority to the contrary, a trial court may not on the one hand grant probation and on the other hand impose institutional confinement or a jail sentence as a condition of that probation. Trial courts have a wide discretion in imposing certain conditions upon a probationer, but not included within its discretionary power is the authority to impose jail confinement as a condition."

([10]) El Art. 2 de la Ley Núm. 259, ante, 34 L.P.R.A. sec. 1027, le concede, en lo pertinente, discreción al Tribunal Superior para conceder los beneficios de una sentencia suspendida a convictos de ciertos delitos graves y en casos de delitos menos graves que surjan de los mismos hechos de los referidos delitos graves " . . . siempre que al tiempo de imponer dicha sentencia, concurran todos los requisitos que a continuación se enumeran: (1) que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito alguno con anterioridad a la comisión del delito por el cual fuere procesada; y a la cual no se hubiere suspendido los efectos de una sentencia anterior por delito grave; (2) que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico; (3) que el juez sentenciador tenga ante sí un informe que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada, y que, del contenido de ese informe, pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad."

debe ni puede, por sí sola, ser obstáculo para resolver lo contrario en ausencia de una prohibición expresa al efecto. En primer lugar, no contamos con el beneficio de un historial legislativo de dicha ley que nos permita cerciorarnos de cuál fue la verdadera intención del legislador en lo relativo a este aspecto; desafortunadamente el expediente original de la misma se extravió en la Legislatura. Véase *Pueblo v. Tribunal de Distrito*, 66 D.P.R. 399, 400 (1946).

En segundo lugar, nuestra Ley de Sentencia Suspendida tiene el propósito, entre otros, de hacer viable la implantación de la política pública enunciada en la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado, L.P.R.A., Tomo 1, ed. 1982, pág. 379, a los efectos de "propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible *su rehabilitación* moral y social". (Énfasis suplido.)[11] Consubstancialmente, el Art. 60 del vigente Código Penal[12] contempla, entre otros, como "objetivos generales que informan la imposición de la pena", *la rehabilitación* moral y social del autor del delito, el *castigo justo* al mismo, y el *efecto disuasivo* de la misma en relación con futura conducta delictiva. Somos del criterio que la imposición de un período de reclusión como condición de la sentencia suspendida que se le imponga a un convicto en particular puede resultar ser, en determi-

---

Por otro lado, el Art. 3 de la referida ley, según enmendada, 34 L.P.R.A. sec. 1028, establece, en lo pertinente que:

"La duración del período de libertad a prueba a que se hace mención en las secs. 1026 a 1029 de este título será igual a la duración del período fijado en la sentencia."

[11] Véase Informe de la Comisión de lo Jurídico del Senado sobre el P. de la C. 791 que se convirtió en la Ley Núm. 2 de 26 de febrero de 1987. La misma enmendó la ley que crea la Junta de Libertad bajo Palabra. En el informe se expresa que al igual que la institución de la Sentencia Suspendida, la de Libertad bajo Palabra tiene su origen en el Art. VI, Sec. 19, de la Constitución del Estado Libre Asociado.

[12] 33 L.P.R.A. sec. 3284.

nados casos, de gran ayuda en la "rehabilitación moral y social", Art. 60 del Código Penal, *supra*, del mismo. Dicha condición, de ordinario, no sólo tiene un *efecto punitivo y disuasivo* sobre el probando, sino que *crea consciencia* en el convicto de la seriedad del delito por él cometido.

En tercer lugar, de una lectura integral de las disposiciones de la Ley de Sentencia Suspendida se desprende, con meridiana claridad, *que la discreción es parte o eje vital del esquema teórico de la misma*. La razón es sencilla: para lograr los objetivos de este sistema resulta indispensable *que los jueces de instancia tengan una gran flexibilidad, o discreción, en la administración de la misma*. El logro del objetivo de la rehabilitación del convicto que persigue este sistema depende en gran medida de *la facultad del juez de poder individualizar cada caso*, imponiendo las condiciones pertinentes y necesarias que en su opinión la situación particular ante su consideración requiere y amerita. Esa precisamente es, en nuestra opinión, la razón de ser del lenguaje contenido en 34 L.P.R.A. sec. 1031, la cual, en lo pertinente, establece:

> Durante el término de cualquier sentencia que haya sido suspendida, el acusado quedará sujeto a la autoridad del tribunal en que se impuso la sentencia, *y el juez de dicho tribunal tendrá facultades para prescribir las condiciones para la suspensión de la sentencia*, y, cuando esté convencido de la mala conducta del acusado, ordenar su arresto por el tiempo que falta para terminar su sentencia. (Énfasis suplido.)[18]

---

[18] En *Pueblo v. González Olivencia*, 116 D.P.R. 614, 618 (1985), sostuvimos —a base de la amplia discreción que le concede la Ley Núm. 259 de 3 de abril de 1946— la facultad de los tribunales de instancia para, no obstante concederle al allí peticionario los beneficios de una sentencia suspendida, *ordenar el ingreso del mismo a los Hogares Crea* con el propósito de que recibiera tratamiento para su adicción.

 Somos del criterio que los términos, generales y amplios, en que está fraseada la transcrita disposición legal constituyen *base estatutaria suficiente* para sostener la facultad de los tribunales de instancia para ordenar, como condición de una sentencia suspendida, la reclusión del convicto-probando en una institución penal durante parte del término total de la sentencia suspendida impuesta. La adopción de la posición contraria, la cual sostiene el Procurador General en representación del Estado, *colocaría a nuestros jueces de instancia en la disyuntiva inaceptable de tener que escoger entre la suspensión de la totalidad de la sentencia a un convicto que consideran podría beneficiarse de un breve período de reclusión o en la de ordenar su encarcelación, por el término total de la sentencia impuesta, a pesar de entender que ello no es necesario para lograr su rehabilitación.* Ello realmente no es lo más conveniente para el mejor funcionamiento de nuestro sistema de justicia criminal.

## IV

 Siendo la Ley de Sentencia Suspendida una ley de naturaleza remedial con un propósito rehabilitador —razón por la cual la misma debe ser interpretada liberalmente, *Alcalá v. Corte,* 66 D.P.R. 430 (1946); *Martínez Reyes v. Tribunal Superior,* 104 D.P.R. 407 (1975); *Beauchamp v. Holsum Bakers of P.R.,* 116 D.P.R. 522 (1985)— resolvemos que los tribunales de instancia tienen el poder y la facultad, al amparo de las disposiciones de la citada ley, para imponer un período de reclusión como condición de la concesión de los beneficios de una sentencia suspendida *en aquellos casos en que así lo entiendan procedente y necesario.* No existe disposición estatutaria en estos momentos que regule *la duración* del período de tiempo durante el cual el probando puede ser recluido, como condición de la sentencia suspendida, en

una institución penal. Hasta tanto la Asamblea Legislativa de Puerto Rico actúe al respecto —ya autorizando expresamente la condición en controversia, ya prohibiendo específicamente la misma— resolvemos que el mismo *no podrá exceder del término de un (1) año*.[14]

Por los fundamentos antes expuestos, *se dictará sentencia modificando la "sentencia enmendada" emitida por el Tribunal Superior de Puerto Rico, Sala de Guayama, el día 30 de enero de 1986, a los efectos de reducir al período de un (1) año el término de tiempo durante el cual el recurrido Vega Vélez deberá ser recluido en una institución penal, y, así modificada, se confirmará la misma.*

---

(14) Como expresáramos en el esc. 6, ante, las distintas jurisdicciones estatales que han legislado sobre la materia han establecido un término que fluctúa entre los treinta (30) días y un (1) año. Consideramos apropiado establecer en nuestra jurisdicción, como término máximo, el período de un (1) año.