Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br><br>v.<br><br><br>CARLOS JULIÁN MALDONADO DÁVILA<br><br>Recurrido | KLCE202301405 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Criminal Núm.: KLE2022G0166 KLE2022G0167 KLE2022M0005<br><br>Sobre: Art. 4.02 Ley 22 (Modalidad de Delito Grave), Art. 5.07 (C) Ley 22 |

Panel integrado por su presidenta, la Juez Brignoni Mártir, el Juez Candelaria Rosa, la Jueza Álvarez Esnard y la Jueza Díaz Rivera.'

Díaz Rivera, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 16 de mayo de 2024.

Comparece ante *nos* el Ministerio Público por conducto de la Oficina del Procurador General (Ministerio Público o Peticionario) mediante un recurso de *certiorari* presentado el 11 de diciembre de 2023. Mediante dicho recurso solicita que revisemos la *Sentencia* emitida el 9 de noviembre de 2023 por el Tribunal de Primera Instancia (foro primario o foro sentenciador), Sala Superior de San Juan. En el referido dictamen, el foro primario impuso la pena de 10 años de cárcel al Señor Carlos Julián Maldonado Dávila (Sr. Maldonado o Recurrido) por infracciones los Artículos 5.07(C) y 4.02 de la *Ley de Vehículos y Tránsito de Puerto Rico*, Ley Núm. 22 de 7 de enero de 2000, según enmendada, 9 LPRA sec. 5001 *et seq.,* a la vez que suspendió los efectos de esta completamente, en función de la *Ley de Sentencia Suspendida y Libertad a Prueba* (Ley de Sentencia Suspendida), *infra.*

Por los fundamentos que expondremos a continuación, expedimos el auto de *certiorari* para modificar la *Sentencia* del foro primario.

**I.**

Por hechos ocurridos el 4 de enero de 2022, el Tribunal de Primera Instancia consideró probado más allá de duda razonable, que el Sr. Maldonado le ocasionó la muerte a Natalia Nicole Ayala Rivera y produjo daños a Carlos Sosa Bigio al conducir un vehículo de forma negligente, con tintes ilegales y en estado de agotamiento, e inmediatamente irse a la fuga. Consecuentemente, el 11 de agosto de 2023, fue hallado culpable por infracciones a los Artículos 5.07(C) y 4.02 de la *Ley de Vehículos y Tránsito, supra.* Posterior a ello, se rindió un informe presentencia el 6 de octubre de 2023 en el cual se recomendó al foro primario que el Sr. Maldonado cumpliera una sentencia fraccionada.[1]

Dicho informe presentencia fue objeto de una Vista de Impugnación ante el foro primario el 9 de noviembre de 2023. En ausencia de causa que impidiera dictar sentencia, el foro procedió en dicha vista a sentenciar al Recurrido a la siguiente pena:

> En el caso KLE2022G0167 por el Art. 5.07 (c) de la Ley 22, diez (10) años bajo el régimen de una sentencia suspendida y $10,000.00 de multa o un día de cárcel por cada $50.00 que deje de pagar. En el caso KLE2022G0166 por el Art. 4.02 de la Ley 22 (modalidad de delito grave) tres (3) años bajo el régimen de una sentencia suspendida. Estas penas serán cumplidas de forma concurrentes entre sí para un total de diez (10) años. Se impone el pago de $300.00 por concepto de la Pena Especial en cada caso. Se le conceden 30 días para efectuar el pago de la multa y las penas especiales.

---

[1] La Técnico Servicio Sociopenal fundamentó su recomendación en los siguientes hallazgos: (1) el Recurrido conducía su vehículo de manera negligente; (2) abandonó el lugar de los hechos sin brindar ayuda a las víctimas; (3) mintió sobre los hechos con el fin de beneficiarse y no asumir responsabilidad; (4) no acepta la comisión del delito, por lo cual no hay arrepentimiento; (5) responsabiliza al perjudicado, el Sr. Carlos Sosa Bigio de haber cambiado la descripción del vehículo, sin tomar en consideración que fue él quien los impactó; (6) no ha mostrado empatía hacía las víctimas ni sus familiares, quienes sufrieron grandes daños psicológicos y físicos; y (7) continua con su intención de no asumir responsabilidad por lo sucedido.

Insatisfecho, recurre el Ministerio Público mediante el presente recurso de *certiorari*, alegando los siguientes señalamientos de error:

**El Tribunal de Primera Instancia cometió un error de derecho al interpretar la Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 de 3 de abril de 1946, según enmendada, y entender que, bajo las circunstancias particulares del presente caso, tenía la facultad de conceder el privilegio de sentencia suspendida, a pesar de que no se cumplen *todos* los requisitos establecidos en la legislación.**

**El Tribunal de Primera Instancia cometió un craso abuso de discreción al *ignorar* hechos materiales existentes en este caso y descartar, *sin más y sin fundamento alguno*, el Informe Presentencia y la recomendación de sentencia fraccionada o mixta allí consignada y conceder *automáticamente* la suspensión *total* de la sentencia basado *únicamente* en el hecho de que el delito por el cual resultó convicto el Sr. Carlos Julián Maldonado Dávila no esta excluido de la Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 de 3 de abril de 1946, según enmendada.**

Oportunamente, el Recurrido presentó el 16 de enero de 2024 su oposición al recurso de *certiorari*. Con el beneficio de la comparecencia de ambas partes, procedemos a exponer el marco jurídico pertinente a la controversia ante nuestra consideración.

## II.

### A. *Certiorari*

El auto de *certiorari* es el recurso extraordinario mediante el cual un tribunal de jerarquía superior puede revisar, a su discreción, una decisión de un tribunal inferior. *Rivera Gómez y otros v. Arcos Dorados Puerto Rico, Inc. y otros*, 2023 TSPR 65. Véase, además, *Torres González v. Zaragoza Meléndez*, 211 DPR 821 (2023); *800 Ponce de León Corp. v. AIG*, 205 DPR 163, 174 (2020); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009). En particular, es un recurso mediante el cual se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra*. Así pues, la determinación de expedir o denegar un recurso de *certiorari* está enmarcada en la discreción judicial. *800 Ponce de*

*León Corp. v. AIG, supra.* No obstante, la discreción judicial para expedir o no el auto de *certiorari* solicitado no ocurre en un vacío ni en ausencia de unos parámetros. *Torres González v. Zaragoza Meléndez, supra.*

Con el fin de que podamos ejercer de una manera sensata nuestra facultad discrecional de entender o no en los méritos de los asuntos que son planteados mediante el recurso, la Regla 40 de nuestro Reglamento, 4 LPRA Ap. XXII-B, señala los criterios que debemos considerar al atender una solicitud de expedición de un auto de *certiorari. Torres González v. Zaragoza Meléndez, supra.* En lo pertinente, la precitada disposición reglamentaria dispone lo siguiente:

El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari,* o de una orden de mostrar causa:

A. Si el remedio y la disposición de la decisión recurrida a diferencia de sus fundamentos son contrarios a derecho.
B. Si la situación de hechos planteada es la más indicada para el análisis del problema.
C. Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
D. Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
E. Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
F. Si la expedición del auto o de la orden de mostrar causa no causa un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
G. Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Nótese que, distinto al recurso de apelación, el auto de *certiorari,* por ser un recurso discrecional, debemos utilizarlo con cautela y por razones de peso. *Pueblo v. Díaz de León, supra,* pág. 918. Ahora bien, el Tribunal Supremo de Puerto Rico reiteradamente ha indicado que la *discreción* significa tener poder para decidir en

una u otra forma, esto es, para escoger entre uno o varios cursos de acción. *Pueblo v. Rivera Santiago*, 176 DPR 559, 580 (2009); *García v. Padró,* 165 DPR 324, 334 (2005). El adecuado ejercicio de la discreción judicial está "inexorable e indefectiblemente atado al concepto de la razonabilidad". *Pueblo v. Ortega Santiago,* 125 DPR 203, 211 (1990). Así pues, un tribunal apelativo no intervendrá con las determinaciones discrecionales de un tribunal sentenciador, a no ser que las decisiones emitidas por este último sean arbitrarias o en abuso de su discreción. *Pueblo v. Rivera Santiago, supra*, pág. 581; *S.L.G. Flores, Jiménez v. Colberg,* 173 DPR 843 (2008).

**B.    Discreción Judicial**

La discreción es una forma de razonabilidad aplicada al discernimiento judicial con el propósito de llegar a una conclusión justiciera. Está resuelto que la discreción judicial faculta al foro primario a escoger entre uno o varios cursos de acción dentro de un marco de razonabilidad y sin hacer abstracción del resto del Derecho. *García Rubiera v. Asociación,* 165 DPR 311 (2005) (citando a *Pueblo v. Ortega Santiago,* 125 DPR 203 (1990); *Pueblo v. Sánchez González,* 90 DPR 197 (1964)). Ahora bien, los tribunales apelativos no debemos intervenir con las determinaciones discrecionales del foro primario con el objetivo de sustituir su criterio por el nuestro. No obstante, esa deferencia cede, cuando el Tribunal de Primera Instancia actúa con prejuicio, parcialidad, incurrió en craso abuso de discreción o incurrió en error manifiesto. *Citibank et al v. ACBI et al,* 200 DPR 724, 735-736 (2018).

Así pues, nuestro Tribunal Supremo ha establecido que un Tribunal incurre en un abuso de discreción:

> [1] cuando el juez no toma en cuenta e ignora en la decisión que emite, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto;

> [2] cuando el juez, por el contrario, sin justificación ni fundamento alguno, concede gran peso y valor a un

hecho irrelevante e inmaterial y basa su decisión exclusivamente éste; o

[3] cuando, no obstante considerar y tomar en cuenta todos los hechos materiales e importantes y descarta los irrelevantes, el juez los sopesa y calibra livianamente. *Pueblo v. Rivera Santiago,* 176 DPR 559, 581 (2009) (citando a *García v. Padró,* 165 DPR 324, 336 (2005); *Pueblo v. Ortega Santiago,* 125 DPR 203, 211-212 (1990)).

En *Pueblo v. Ortega Santiago, Id.,* precisamente se discutía la suspensión de una sentencia. En esa ocasión, el Tribunal Supremo estableció que siempre estaba "presto a entender en todo caso en que, a [su] juicio, el juez de instancia haya incurrido en un abuso de discreción al denegar, o conceder, a un convicto de delito los beneficios de una sentencia suspendida. *Pueblo v. Sánchez González,* ante; *Pueblo v. Laboy,* 110 DPR 164 (1980)". *Id.* en la pág. 212.

## C. *Ley de Sentencia Suspendida y Libertad a Prueba*

*La Ley de Sentencia Suspendida y Libertad a Prueba,* Ley Núm. 259 de 3 de abril de 1946, según enmendada, 34 LPRA sec. 1026 *et seq.*, fue creada con el propósito de establecer "la sentencia probatoria en el sistema judicial de Puerto Rico; para disponer en qué casos deberá suspenderse el efecto de la sentencia y ponerse al sentenciado a prueba, proveyendo para ello; para fijar los requisitos necesarios que deben concurrir para la imposición de tal sentencia probatoria, y para otros fines." Exposición de motivos, *Ley de Sentencia Suspendida, supra.* En ella, la Asamblea Legislativa estableció el privilegio que permite a un convicto cumplir su sentencia o parte de esta fuera de las instituciones penales. *Pueblo v. Vélez Torres,* 2023 TSPR 66 (citando a *Pueblo v. Hernández Villanueva,* 179 DPR 872 (2010); *Pueblo v. Zayas Rodríguez,* 147 DPR 530 (1999); *Pueblo v. Molina Virola,* 141 DPR 713 (1996)). Véase, también, *Ruiz Matos v. Dpto. de Corrección y Rehabilitación,*

2023 TSPR 144 (citando a *Pueblo v. Negrón Caldero*, 157 DPR 413 (2002)).

Al amparo del segundo artículo del estatuto, el Tribunal de Primera Instancia está facultado a ejercer la discreción de suspender los efectos de una sentencia sujeto a:

(1) Que dicha persona, con anterioridad a la fecha en que se intente suspender la sentencia dictada, no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fuere procesada; y a la cual no se hubieren suspendido los efectos de una sentencia anterior por delito grave;

(2) **que las circunstancias en que se cometió el delito no evidencien que existe en el autor del mismo un problema de conducta o de carácter para cuya solución favorable, en interés de la debida protección de la comunidad, se requiera la reclusión de dicha persona en alguna de las instituciones penales de Puerto Rico**;

(3) **que el juez sentenciador tenga ante sí un informe** que le haya sido rendido por el Administrador de Corrección después de este último haber practicado una investigación minuciosa de los antecedentes de familia e historial social de la persona sentenciada, **y que, del contenido de ese informe, pueda dicho juez sentenciador concluir que ningún aspecto de la vida de esa persona evidencia que haya necesidad de que se le recluya en alguna de las instituciones penales de Puerto Rico para que se logre la reforma o rehabilitación que para ella persigue la ley como medida de protección adecuada a la comunidad**.

(4) que, en los casos en que se tiene la obligación de pagar una pensión alimentaria, dicha persona haya cumplido con su obligación de hacer los pagos o esté acogido a un plan de pagos y esté cumpliendo con el mismo. Artículo 2, *Ley de Sentencia Suspendida, supra* (énfasis suplido); Véase, también, *Pueblo v. Vázquez Carrasquillo*, 174 DPR 40 (2008).

Cuando nuestro Tribunal Supremo tuvo la oportunidad de interpretar la *Ley de Sentencia Suspendida, supra,* en *Pueblo v. Vega Vélez,* 125 DPR 188 (1990), se adoptaron en nuestra jurisdicción las sentencias fraccionadas como compatibles con la *Ley de Sentencia Suspendida, supra.* El Tribunal se apartó del concepto tradicional de reconocer el beneficio de sentencia suspendida como incompatible con la libertad a prueba, por estimar que las

autoridades modernas habían rechazado el "considerar que un término de encarcelamiento sea necesariamente inconsistente con la concesión de una sentencia suspendida, pues se enfatiza el propósito rehabilitador de la misma y se sostiene que un término de reclusión puede en algunos casos promover el fin que persigue el mecanismo" de sentencia suspendida. *Id.* en la pág. 197.

La Curia, además, adoptó el lenguaje del derogado Artículo 60 del Código Penal vigente en el momento de la emisión de la opinión, al expresar que era "del criterio que la imposición de un periodo de reclusión como condición de la sentencia suspendida que se le imponga a un convicto en particular puede resultar ser, en determinados casos, de gran ayuda en la rehabilitación moral y social." *Id.* en la pág. 201-202 (*citas omitidas*). Finalmente, el Tribunal decretó que "de una lectura integral de las disposiciones de la Ley de Sentencia Suspendida se desprende, con meridiana claridad, que la discreción es parte o eje vital del esquema teórico de la misma", debido a que "para lograr los objetivos de este sistema resulta indispensable que los jueces de instancia tengan gran flexibilidad, o discreción, en la administración de la misma". *Id.* pág. 202.

Por otra parte, en dicha jurisprudencia también se impuso un límite al tiempo de reclusión en sentencias fraccionadas hasta tanto la Asamblea Legislativa actuara. A esos efectos, resolvió: "[h]asta tanto la Asamblea Legislativa de Puerto Rico actúe al respecto —ya autorizando expresamente la condición en controversia [entiéndase el período de reclusión en una sentencia fraccionada], [o] ya [sea] prohibiendo específicamente la misma— resolvemos que el mismo no podrá exceder del término de un (1) año". *Id.* en la pág. 203.

**D. Código Penal**

Mediante la *Ley Núm. 246 de 26 de diciembre de 2014,* según enmendada, la Asamblea Legislativa enmendó el Código Penal, 33 LPRA sec. 5001 *et seq.,* particularmente el Artículo 64 donde se le reconoció una discreción amplia al Juez o Jueza al momento de impartir una pena y determinar el término de reclusión. El artículo lee como sigue:

> Cuando el tribunal imponga pena de reclusión o pena que conlleve algún tipo de restricción de libertad, o la suspensión de licencia, permiso o autorización, dictará una sentencia determinada que tendrá término específico de duración. En los delitos graves cuyo término de reclusión señalado en el tipo sea de ocho (8) años o menos y en las tentativas de delitos, cuya pena sea igual o menor de ocho (8) años y **en los tipos negligentes, el tribunal puede imponer una o cualquier combinación de las siguientes penas en sustitución de la pena de reclusión**: restricción terapéutica, restricción domiciliaria, libertad a prueba o servicios comunitarios. En el caso en que combine una o más de estas penas deberá asegurarse de que el total de años de duración de las penas que combinó no sea mayor del término de reclusión dispuesto para el delito correspondiente. **La imposición de una pena en sustitución a la reclusión se determinará por el tribunal tomando en consideración [1] las recomendaciones del informe pre-sentencia**, **[2] los requisitos de cada tipo de pena, [3] la gravedad del delito y sus consecuencias, [4] la rehabilitación del convicto y [5] la seguridad de la comunidad.** 33 LPRA sec. 5097. (énfasis suplido).

Es meritorio aclarar que, según el Artículo 9 del Código Penal, cuando estamos frente a una materia regulada por diversas disposiciones penales, la disposición especial prevalecerá sobre la general, 33 LPRA sec. 5009. Debido a este Principio de Especialidad, el precitado Código Penal aplica de manera supletoria en este caso, pues la intención legislativa de regular la suspensión de sentencias se atendió expresamente en la *Ley de Sentencias Suspendidas, supra.* No obstante, como nos enfrentamos a una laguna en dicha legislación, recurrimos al Artículo 64 del Código Penal, *supra,* para armonizar el asunto de imposición de términos en sentencias fraccionadas.

**III.**

En síntesis, el Procurador General argumenta en su primer señalamiento de error que el Tribunal de Primera Instancia posee discreción para otorgar el privilegio de una sentencia suspendida o fraccionada únicamente cuando el sentenciado cumple con todos los requisitos esbozados en el Artículo 2 de la *Ley de Sentencia Suspendida, supra.* Razona el Recurrente que en ausencia de tan solo uno de los requisitos, el foro sentenciador pierde la facultad discresional que le otorga la ley para suspender total o parcialmente una sentencia. Arguye, además, que el Sr. Maldonado evidentemente incumplió con los requisitos dos (2) y tres (3) del segundo artículo del precitado estatuto, por lo cual no puede beneficiarse de privilegio alguno otorgado por la *Ley de Sentenca Suspendida, supra.*

Como vimos, cuando nuestro Tribunal Supremo interpretó la *Ley de Sentenca Suspendida, supra,* y reconoció la validez de las sentencias fraccionadas en *Pueblo v. Vega Vélez, supra,* lo hizo a través del crisol de la rehabilitación, a la vez que se apartó de una interpretación restrictiva del estatuto. En ese momento, y hasta la actualidad, la *Ley de Sentencia Suspendida, supra,* no reconoce textualmente las sentencias fraccionadas, pero su validez es incontrovertible.

En cuanto a la falta de cumplimiento con todos los requisitos establecidos en la legislación alegado en el primer señalamiento de error, podemos coincidir con que los problemas de conducta, carácter y aspectos de la vida del convicto son repudiables. No obstante, no podemos concluir que ello ponga en riesgo la debida protección a la comunidad, lo que es parte del requisito 2 de la *Ley de Sentencia Suspendida.* El primer señalamiento de error no fue cometido.

De otra parte, cuando un foro sentenciador imparte una sentencia fraccionada, el análisis de distribución del tiempo de reclusión y libertad no se hace en el vacío, pues el foro se ve obligado a las diversas exigencias que establece la *Ley de Sentencia Suspendida, supra*. A tono con lo anterior, arguye el Procurador General, por conducto de su segundo señalamiento de error, que aun suponiendo que el Sr. Maldonado pudiese beneficiarse de la *Ley de Sentencia Suspendida, supra*, se denota un craso abuso de discreción del foro primario. Según su argumento, el Sr. Maldonado evidentemente incumplió con los requisitos dos (2) y tres (3), del Artículo 2 de la *Ley de Sentencia Suspendida, supra*, ya que las circunstancias en las que se cometió el delito denotan un problema craso de carácter, y puesto que del informe presentencia surge amplia información para determinar que el Recurrido debe ser ingresado en una institución penal. Dicha postura del Ministerio Público a su vez descansa en la ausencia de fundamento para rechazar la recomendación del informe presentencia, pues razona el Peticionario que sería superfluo que el legislador exija un informe, para que luego un Juez o Jueza tome la decisión de descastarlo sin justificar su razonamiento. Añade que abusó en mayor escala el foro primario al suspender totalmente la sentencia ya que los serios problemas de conducta y carácter que el Sr. Maldonado ha demostrado indican que este no puede lograr su rehabilitación en la libre comunidad. En este señalamiento de error le asiste la razón al Ministerio Publico.

Por su parte, el Recurrido alega que no se le puede imputar una mente fría y calculadora pues no se probó en juicio que él supiera de los daños ocurridos en la escena, que culminaron con la muerte de Natalia Ayala Rivera. En relación con el informe, argumenta el Sr. Maldonado que de éste no se desprende información que pruebe su deformación moral. Añadió que durante

la Vista de Impugnación del informe presentencia hubo amplia oportunidad par aclarar y subsanar cualquier laguna que tuviera dicho informe, lo que hizo el foro primario antes de hacer su determinacion; decisión que enfatiza el Recurrido, no fue basada únicamente en el hecho de que le delito por el cual fue convicto no esta excluido del alcance de la *Ley de Sentencia Suspendida, supra.*

Lo hechos concernientes al presente caso, que fueron probados más allá de duda razonable en juicio, revelan que el recurrido provocó el accidente de forma negligente o imprudente mientras conducía en exceso de velocidad. Como consecuencia de dicho acto, resultó herido Carlos Sosa Bigio y posteriormente falleció Natalia Ayala Rivera. No obstante, el Sr. Maldonado Dávila optó por abandonar la escena en vez de socorrer a sus víctimas. Si bien el accidente fue producto de la negligencia del Recurrido, la decisión de irse a la fuga implica una conducta intencional y voluntaria de abandonar su deber legal de mantenerse en la escena y de evadir las autoridades.

En el juicio además se probó que el Recurrido diseñó una narrativa falsa con el propósito de radicar una querella, en la cual relató que mientras transitaba por el Municipio de Barceloneta la noche de los hechos, un supuesto "hombre trigueño con gorra" impactó su vehículo y procedió a irse a la fuga. Dicha querella falsa activó innecesariamente los mecanismos investigativos de la Policía Municipal de Manatí. En una interrogación posterior, donde se le cuestionó al Sr. Maldonado sobre incongruencias en su historia, y sobre un accidente ocurrido en la jurisdicción de San Juan, donde había fallecido la joven Natalia Ayala Rivera, éste todavía se mantenía firme en su teoría del accidente ocurrido en Barceloneta. Dicha postura continuó, aunque la prueba desfilada en juicio incluyó: el testimonio del agente que identificó los daños del vehículo

del recurrido como inconsistentes con un impacto con otro vehículo; testimonio de agentes que posicionaron al Recurrido en las áreas cercanas a la escena del crimen minutos antes los hechos; y testimonio indicando que se encontraron pedazos del vehículo del Recurrido en la escena.

No fue hasta la entrevista conducente a la preparación del informe presentencia que el Recurrido presentó una nueva teoría, esta vez admitiendo haber estado involucrado en un accidente en la escena del crimen, entiéndase en San Juan y no en Barceloneta, pero entendía que había impactado un palo o un objeto de construcción y por esa razón continuo la marcha. En el informe también se reveló que el Sr. Maldonado poseía $4,825.00 en multas que incluían infracciones por exceso de velocidad, y que su licencia de conducir de Puerto Rico expiró en el 2015 sin ésta poder ser renovada a raíz de dichas multas, por lo cual conducía con una licencia del Estado de Florida.

A nuestro entender, la radicación de la querella basada en hechos falsos, y la insistencia del Sr. Maldonado en dicha teoría demuestra un carácter mendaz. Asimismo, la decisión de abandonar a sus víctimas en la escena señala la intención de evadir las repercusiones de sus actos, lo cual presenta evidentes fallos en su juicio y carácter. Por tanto, resolvemos que el foro primario debió considerar con mayor detenimiento estas circunstancias al momento de establecer si el Recurrido cualificaba para una sentencia suspendida. En conformidad con lo anterior, esta Curia entiende erró el foro primario en evaluar adecuadamente la totalidad de las circunstancias del presente caso.

Con relación al tercer requisito del precitado Artículo 2, es decir, la evaluación del informe presentencia, resolvemos que el foro sentenciador abusó de su discreción, al no adoptar la recomendación esbozada en el informe presentencia de fraccionar la

sentencia. Entre otras cosas, el informe presentencia incluía hallazgos de cómo el Recurrido poseía un historial de conducir negligentemente, y un incumplimiento craso con el fisco al negarse a pagar las multas impuestas resultantes de dicho historial. Consecuentemente, concluimos que surge del Informe Presentencia información suficiente como para determinar la necesidad de que el Sr. Maldonado sea recluido en una institución penal. Reiteramos lo expresado por nuestro Más Alto Foro, en *Pueblo v. Vega Vélez, supra*:

> "[s]omos del criterio que la imposición de un periodo de reclusión como condición de la sentencia suspendida que se le imponga a un convicto en particular puede resultar ser, en determinados casos, de gran ayuda en la "rehabilitación moral y social", Art. 60 del Código Penal, supra del mismo. Dicha condición, de ordinario, no solo tiene un efecto punitivo y disuasivo sobre el probando, sino que crea consciencia en el convicto de la seriedad del delito por él cometido."

Lo cierto es que, aun si el foro primario estimó insuficiente la información ofrecida en dicho informe —análisis que no asentó debidamente— éste poseía el conocimiento de los hechos materiales que fueron probados más allá de duda razonable en el juicio, para hacer la determinación de que el Sr. Maldonado no era merecedor de una sentencia totalmente suspendida. A tenor con lo antes expuesto, colegimos que el foro primario livianamente sopesó y calibró los hechos materiales importantes, por tanto abusó de su discresión. Véase *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990).

A tenor con lo antes discutido, es incuestionable que el Sr. Maldonado ha demostrado un problema serio de carácter y de conducta, cuya solución apropiada requiere su reclusión parcial como parte de la extinción de su pena. Aclaramos que, no tomamos con ligereza la decisión de modificar el dictamen del foro sentenciador pues reconocemos el ámbito de su discreción. Sin embargo, se nos imposibilita armonizar la suspensión total de la

sentencia con la información vertida en el informe presentencia y las demás circunstancias del delito.

Concluimos que la solución razonable en este caso es dictar una sentencia fraccionada, donde el Sr. Maldonado cumpla dos (2) años en reclusión en una institución penal bajo el control del Departamento de Corrección y Rehabilitación. Este fraccionamiento de sentencia es cónsono con el Art. 64 del Código Penal de Puerto Rico, el cual aplica a la controversia de autos de manera supletoria. Al cumplirse dicho término de dos (2) años, el convicto podrá disfrutar del privilegio de sentencia suspendida, por el resto de los años a los que fue sentenciado. A nuestro juicio, esta distribución de periodos valora la gravedad del delito y la recomendación del informe presentencia, a la vez que contempla el propósito rehabilitador que persigue el estatuto.

## IV.

Por entender que el foro sentenciador abuso de su discreción al no considerar con más rigor los hallazgos presentados en el informe presentencia y las circunstancias que rodean los hechos del caso, modificamos la sentencia dictada en conformidad a lo antes expuesto y devolvemos el caso al Tribunal de Primera Instancia para que se dicte una nueva *Sentencia* según lo aquí resuelto.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

El Juez Candelaria Rosa concurre con opinión escrita.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>CARLOS JULIÁN MALDONADO DÁVILA<br><br>Recurrido | KLCE202301405 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Criminal Núm.:<br>KLE2022G0166<br>KLE2022G0167<br>KLE2022M0005<br><br>Sobre:<br>Art. 4.02 Ley 22 (Modalidad de Delito Grave), Art. 5.07 (C) Ley 22 |
|---|---|---|

## VOTO CONCURRENTE DEL JUEZ CANDELARIA ROSA

Concurro con el resultado de la Sentencia que hoy se notifica, aunque por criterios jurídicos distintos a los enunciados por la mayoría del panel. A continuación, expongo mi interpretación del derecho involucrado junto a la relación de los elementos forenses imbricados a esta, sobre los cuales se articula y fundamenta mi posición.

En este caso, comparece el Ministerio Público por conducto de la Oficina del Procurador General (Ministerio Público o peticionario) vía el *certiorari* de epígrafe y nos solicita variar la *Sentencia* del Tribunal de Primera Instancia, Sala Superior de San Juan, emitida el 9 de noviembre de 2023. Mediante dicho dictamen, el foro recurrido impuso la pena de 10 años de cárcel al señor Carlos Julián Maldonado Dávila (señor Maldonado Dávila o recurrido) por violar los artículos 5.07(C) y 4.02 de la *Ley de Vehículos y Tránsito*, a la vez que suspendió los efectos de esta completamente, en función de la *Ley de Sentencia*

*Suspendida y Libertad a Prueba*, Ley Núm. 259 de 3 de abril de 1946, 34 LPRA sec. 1026 *et seq.* (*Ley de Sentencia Suspendida*).

Según los hechos que el Tribunal de Primera Instancia consideró probados más allá de duda razonable, el señor Maldonado Dávila le ocasionó la muerte a Natalia Nicole Ayala Rivera y produjo daños a Carlos Sosa Bigio al conducir un vehículo de forma imprudente o negligente sin detenerse en el lugar de los hechos y, por el contrario, irse a la fuga. Como producto de tal convicción, se rindió un *Informe Presentencia* que fue objeto de una vista de impugnación ante el foro recurrido, el cual impuso la pena conjunta de 10 años de cárcel a cumplirse bajo el régimen de sentencia suspendida.

Insatisfecho, el Ministerio Público recurrió mediante el presente *certiorari* para argumentar que el Tribunal de Primera Instancia (1) erró como cuestión de derecho al interpretar la *Ley de Sentencia Suspendida* y determinar que en este caso tenía facultad de conceder el privilegio sin que se cumplieran todos los requisitos requeridos por esta y (2) erró al abusar de su discreción al descartar hechos materiales, descartar el *Informe Presentencia* que recomendaba una sentencia fraccionada y suspender la sentencia totalmente solo porque el delito no está excluido. Oportunamente, el recurrido presentó su oposición al recurso de *certiorari*, en la cual planteó, en síntesis, que durante el juicio no surgió que tuviera conocimiento de lo ocurrido en la escena del accidente por lo que no se le puede imputar una mente fría y calculadora; que las lagunas que dejó el *Informe Presentencia* fueron aclaradas por el foro primario y las partes, por lo que se justifica la *Sentencia*; y que la Juez

actuó correctamente dentro de la discreción que el ordenamiento procesal penal le concede.

A propósito del recurso presentado, es conocido que el auto de *certiorari* es un vehículo procesal extraordinario mediante el cual un tribunal de mayor jerarquía puede revisar a su discreción una decisión de un tribunal inferior, sea en los errores de derecho procesal o de derecho sustantivo. *Pueblo v. Díaz de León*, 176 DPR 913 (2009); *Pueblo v. Colón Mendoza*, 149 DPR 630 (1999). La función de un tribunal apelativo frente a la revisión de controversias a través de *certiorari* requiere valorar la actuación del foro de primera instancia y predicar su intervención en si la misma constituyó un abuso de discreción, por lo que en ausencia de tal abuso o de acción prejuiciada, error o parcialidad, no procede intervenir con las determinaciones del Tribunal de Primera Instancia. *Pueblo v. Toro Martínez*, 200 DPR 834 (2018); *Zorniak v. Cessna*, 132 DPR 170 (1992); *Lluch v. España Service Sta.*, 117 DPR 729 (1986). A su vez, las Reglas 193 a 217 de las *Procedimiento Criminal* y la Regla 40 *del Tribunal de Apelaciones* establecen los criterios para tener en cuenta en el ejercicio discrecional de expedir tal auto. Reglas 193-217 de Procedimiento Criminal (34 LPRA sec. 193 *et. seq.*); Regla 40 del Tribunal de Apelaciones (4 LPRA Ap. XXII-A).

Ahora bien, está resuelto que la discreción judicial faculta al foro primario a escoger entre uno o varios cursos de acción dentro de un marco de razonabilidad y sin hacer abstracción del resto del Derecho. *García Rubiera v. Asociación*, 165 DPR 311 (2005) (citando a *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990); *Pueblo v. Sánchez González*, 90 D.P.R. 197 (1964)). Para determinar que el juez sentenciador rebasó

el ámbito de su discreción, debe apreciarse la presencia de uno de los siguientes factores: (1) que el juez no toma en cuenta e ignora, sin fundamento para ello, un hecho material importante que no podía ser pasado por alto; (2) que el juez, sin justificación y fundamento alguno, le concede gran peso y valor a un hecho irrelevante e inmaterial y basa su decisión exclusivamente en el mismo; o (3) que el juez livianamente sopesa y calibra los hechos materiales e importantes. *Pueblo v. Rivera Santiago*, 176 DPR 559 (2009) (citando a *García v. Padró*, 165 DPR 324 (2005); *Pueblo v. Ortega Santiago*, 125 DPR 203 (1990)).

Por su parte, la *Ley de Sentencia Suspendida* estableció el privilegio que permite a un convicto cumplir su sentencia o parte de esta fuera de las instituciones penales. *Pueblo v. Vélez Torres*, 2023 TSPR 66 (citando a *Pueblo v. Hernández Villanueva*, 179 DPR 872 (2010); *Pueblo v. Zayas Rodríguez*, 147 DPR 530 (1999); *Pueblo v. Molina Virola*, 141 DPR 713 (1996)). Véase, también, *Ruiz Matos v. Dpto. de Corrección y Rehabilitación*, 2023 TSPR 144 (citando a *Pueblo v. Negrón Caldero*, 157 DPR 413 (2002)). A tenor con la misma, de no estar un delito específicamente excluido de su ámbito, el Tribunal de Primera Instancia está facultado a ejercer la discreción de suspender los efectos de una sentencia sujeto a que (1) la persona no hubiere sido convicta, sentenciada y recluida en prisión por delito grave alguno con anterioridad a la comisión del delito por el cual fue procesada y no se le hubieren suspendido los efectos de una sentencia anterior por delito grave; (2) las circunstancias en que se cometió el delito no evidencien que existe en el autor un problema de conducta o de carácter para cuya solución favorable, en interés de la debida

protección de la comunidad, se requiera la reclusión de dicha persona en una institución penal; (3) el juez sentenciador tenga ante sí un *Informe Presentencia* del cual se pueda concluir que ningún aspecto de su vida evidencia que haya necesidad de que se le recluya en alguna institución penal; y (4) en los casos en que se tiene la obligación de pagar una pensión alimentaria, dicha persona haya cumplido con su obligación de hacer los pagos o esté acogido a un plan de pagos y esté cumpliendo con el mismo. Art. 2; véase, también, *Pueblo v. Vázquez Carrasquillo*, 174 DPR 40 (2008).

En el presente caso, el Procurador General sostiene, por vía de su primer planteamiento de error, que si uno de dichos criterios no está presente —y alude en particular a los requisitos 2 y 3 como pertinentes a este recurso— la consecuencia jurídica es que la *Ley de Sentencia Suspendida* no aplica en forma alguna, ergo impide a los Tribunales suspender los efectos de una sentencia en todo o en parte. Se equivoca. Si bien la ausencia particular de dichas exigencias 2 y 3 impide necesariamente la suspensión total de una sentencia, no prohíbe su suspensión parcial, sino que solo exige un período efectivo de reclusión en la cárcel. Esta interpretación es la consecuencia jurídica inexorable a partir de los pronunciamientos del Tribunal Supremo de Puerto Rico en *Pueblo v. Vega Vélez*, 125 DPR 188 (1990), caso que adoptó las sentencias fraccionadas como compatibles con la *Ley de Sentencia Suspendida*.

Allí, el Procurador General de entonces, como el de ahora, sostuvo que por virtud de los requisitos contenidos en la *Ley de Sentencia Suspendida* esta solo sancionaba la suspensión o reclusión total de una sentencia. Sin embargo, el Tribunal Supremo determinó

que, aunque la terminología positiva de la ley parecía avalar tal teoría, el propósito rehabilitador de la sección 19 de artículo VI de la Constitución del ELA apuntaba a rechazar tal interpretación restringida de la *Ley de Sentencia Suspendida.* Al rechazar el aparente sentido inflexible del estatuto, el Tribunal Supremo citó exactamente la relación de requerimientos que en este caso cita el Procurador General, incluyendo los requisitos 2 y 3 que este plantea como obstáculos para impedir la aplicación de la *Ley de Sentencia Suspendida* en este caso, siquiera parcialmente, como parte de una sentencia fraccionada. Véase, *Pueblo v. Vega Vélez*, *supra*, en la pág. 199. Desde entonces, la noción de que el incumplimiento de los requisitos 2 o 3 a los que apunta el peticionario abrogan toda aplicación de la *Ley de Sentencia Suspendida* es falaz, porque, aunque sí prohíbe la suspensión total de una sentencia, no impide una suspensión parcial que contemple un período de reclusión.

Esta conclusión es ineludible, además, pues si se adoptara la posición del Procurador General, no habría espacio para las sentencias fraccionadas, que ya fueron acogidas por dicha jurisprudencia, y que actualmente están contempladas por el artículo 64 del Código Penal, 33 LPRA sec. 5097. Ello porque en la práctica y realidad vital del juzgador al que compete sentenciar, ¿qué criterios distintos a los relacionados a dichos requisitos 2 o 3 —alusivos a problemas de conducta, carácter, aspectos de la vida de un convicto o circunstancias del delito— tomaría en cuenta un Tribunal para dictar una pena fraccionada? Es decir, resulta incontestable que un juez que opta por recluir en la cárcel a una persona, aunque sea parcialmente, no lo hace arbitrariamente, sino

siempre por consideraciones vinculadas indefectiblemente a elementos de juicio ligados a los criterios 2 o 3 que la *Ley de Sentencia Suspendida* incluye como requisitos.

Por otra parte, dicha jurisprudencia también impuso un límite al tiempo de reclusión en sentencias fraccionadas hasta que hubiese legislación que regulara ese aspecto. A esos efectos, dispuso:

> Hasta tanto la Asamblea Legislativa de Puerto Rico actúe al respecto —ya autorizando expresamente la condición en controversia (el período de reclusión en una sentencia fraccionada), ya prohibiendo específicamente la misma— resolvemos que el mismo *no podrá exceder del término de un (1) año*. *Pueblo v. Vega Vélez*, *supra*, en la pág. 203.

A tal propósito, la Asamblea Legislativa actuó eventualmente mediante la aprobación del artículo 64 del *Código Penal*, según enmendado, particularmente por la Ley Núm. 146-2014, mediante el cual estableció las circunstancias y combinaciones posibles al emitir una sentencia fraccionada, a la vez que prescindió del máximo de un año en reclusión para estas y dejó el término de reclusión al criterio del Juez sentenciador.[2] En este aspecto, contrario a lo que plantea la ponencia mayoritaria, no acontece una relación de especialidad entre el Código Penal y la *Ley de Sentencia Suspendida* pues, como se sabe, en el ámbito penal tal relación acontece solo cuando un estatuto reproduce los elementos de otro y, además, añade elementos puntuales adicionales. S. Mir Puig, Derecho Penal: Parte General, 8.ª ed., Montevideo, Ed. B de F, 2008, págs. 654-655. Dicho artículo 64 prescribe:

---

[2] Según la exposición de motivos de dicha ley, para "trabajar en un modelo nuevo [de penas], mediante enmiendas al Código Penal de 2012, que estableciera un margen adecuado para la discreción judicial e instituyera un sistema de penas proporcionales a la gravedad de los delitos, que a su vez propiciaran la rehabilitación de la persona sentenciada" y restituir "la facultad que tenía el Juez de seleccionar entre varias penas en sustitución de la reclusión o combinarlas mediante una sentencia fraccionada, con una parte en reclusión y otra en una o más de las penas sustitutivas de reclusión…". Véase, además, D Nevárez-Muñiz, *Código Penal de Puerto Rico*, 4ª ed. Rev., San Juan, 2019, pág. 115.

> Artículo 64. — Imposición de la sentencia. (33 L.P.R.A. § 5097) Cuando el tribunal imponga pena de reclusión o pena que conlleve algún tipo de restricción de libertad, o la suspensión de licencia, permiso o autorización, dictará una sentencia determinada que tendrá término específico de duración. En los delitos graves cuyo término de reclusión señalado en el tipo sea de ocho (8) años o menos y en las tentativas de delitos, cuya pena sea igual o menor de ocho (8) años y en los tipos negligentes, el tribunal puede imponer una o cualquier combinación de las siguientes penas en sustitución de la pena de reclusión: restricción terapéutica, restricción domiciliaria, libertad a prueba o servicios comunitarios. En el caso en que combine una o más de estas penas deberá asegurarse de que el total de años de duración de las penas que combinó no sea mayor del término de reclusión dispuesto para el delito correspondiente. La imposición de una pena en sustitución a la reclusión se determinará por el tribunal tomando en consideración las recomendaciones del informe pre-sentencia, los requisitos de cada tipo de pena, la gravedad del delito y sus consecuencias, la rehabilitación del convicto y la seguridad de la comunidad.[3]

Aclarado el marco de adjudicación establecido por el derecho vigente para este caso, cabe destacar, además, que contrario al juicio de la defensa y a una noción legal errada que le sirve de sustrato, la consideración de circunstancias en que se cometió el delito aludidas en el requisito 2 de la *Ley de Sentencia Suspendida* no solo implica atención a elementos extrínsecos a aquellos del delito juzgado, sino también a los elementos constitutivos del mismo. Ello porque la actuación del sujeto activo del delito al realizar la conducta prohibida enlaza a ambos tipos de elementos de manera inextricable y permite que se desdoblen para cobrar relevancia tanto para el fallo como para la pena.

---

[3] Los delitos involucrados en el presente caso son de tipo negligente. Al respecto, el profesor Luis Chiesa Aponte señala que "el artículo 64 del CPPR de 2012 se enmendó en el 2014 para establecer que se podrá imponer pena de libertad a prueba en sustitución de la pena de reclusión en los tipos *negligentes*". L. Chiesa Aponte, Dere*cho Penal Sustantivo*, 88 Rev. Jur. UPR 149, 154.

En lo que concierne al presente caso, los hechos verificados por la condena más allá de duda razonable revelan que el recurrido provocó el accidente objeto del caso de epígrafe en forma negligente o imprudente mientras conducía en exceso de velocidad, en estado de agotamiento y con parte de sus cristales en exceso del nivel de oscuridad permitido. En función de tal acción, produjo una persona herida y otra muerta que, sin embargo, el señor Maldonado Dávila optó por abandonar a conciencia, a su suerte y mediante fuga.

Esto queda claro, por un lado, porque la teoría que la defensa trató de transmitir durante el juicio sobre la inadvertencia del recurrido entorno al daño causado fue rechazada por el Tribunal recurrido al adjudicarle la fuga en situación de muerte o heridos prevista en los delitos. Después de todo, si bien la causa del accidente acontece por negligencia o imprudencia, qué duda cabe que el agravamiento que comporta la fuga en situación de muerte o heridos implica necesariamente estimar una conducta intencional y voluntaria de abandonar el lugar en el que permanecen víctimas. Lo cierto es que la determinación de culpabilidad más allá de duda razonable de delitos que comportan, tanto la conducción negligente, como el abandono del lugar con una persona muerta, implica igual la demostración de tal imprudencia como la conciencia del abandono voluntario del lugar en el que figuraba la persona herida o muerta. Por tanto, el desvalor de la conducta apreciada en el fallo de este caso lleva consigo la derrota de la teoría del desconocimiento o inconciencia en la fuga, con lo cual debía hacer sus circunstancias más relevantes a la determinación del modo de cumplir la pena, a fin de que el fallo y la sentencia, a la luz de las circunstancias del caso, guardaran mayor coherencia interna.

Por otra parte, la reproducción de dicha teoría de inadvertencia, además de descartada de suyo en el fallo, también quedó desacreditada por parte del propio recurrido, quien desde su partida del lugar de los hechos inauguró una trama discursiva que mutó a través del tiempo y resultó explicable solo desde la pretensión de escape y ocultamiento de su responsabilidad personal. Tal como dilucidado en el juicio, durante la misma noche de los hechos el recurrido construyó una narrativa falsa que comunicó de inmediato a la Sargento municipal Robles Quiñones, en la cual un supuesto señor trigueño impactó su vehículo mientras conducía un carro, que no pudo identificar, mientras transitaba por Barceloneta, en cuyo municipio ocupaba una función destacada que le permitía conocer a miembros de la policía municipal. Esa historia movió los recursos de esa policía municipal de forma distendida para verificar su validez, lo cual incluyó un recorrido exhaustivo de la carretera donde teóricamente había ocurrido el choque mientras el recurrido guiaba verbalmente a los agentes al lugar ilusorio de los hechos. El señor Maldonado Dávila mantuvo tal versión a pesar de tener amplia oportunidad para revelar la verdad y aún luego de que el Agente municipal Ayala Valentín confrontara la disconformidad de los daños de su vehículo con su relato y le explicara que estos parecían compatibles con haber impactado a una persona. Aun así, el recurrido no desistió de su componenda sino hasta la eventual constatación y reconocimiento de que todo se trataba de una mentira.

Aunque durante el *Informe presentencia* el recurrido reconoció, por fin, que se había visto involucrado en un accidente, no en Barceloneta, sino en San Juan, solo lo hizo en clave de evasión. Es

decir, esta vez construyó su narración desde una perspectiva en la cual se colocó como víctima de un escenario de desconocimiento con respecto al modo de ocurrido el suceso y los daños causados a los perjudicados. Mediante su nueva teoría de los acontecimientos, propuso que lo verdaderamente ocurrido fue que en jurisdicción de San Juan pensó que había impactado un palo o algo proveniente de una construcción y que se detuvo a mirar por el retrovisor, pero como no vio nada en la oscuridad, continuó la marcha. Este nuevo relato fue enunciado por el recurrido a pesar de que la prueba examinada por el foro de primera instancia incluyó (1) el referido testimonio del Agente Ayala Valentín, en el que dio cuenta de los daños del vehículo del recurrido como incongruentes con el impacto de un mero palo; (2) los testimonios de los Agentes estatales Maldonado Soto y Santiago Santiago, que vieron el auto de la finada aún con las luces intermitentes prendidas; o (3) el testimonio del Ingeniero Sánchez Castellano, que dio cuenta de que el área de los hechos estaba iluminada. Incluso las fotos de la escena y del vehículo del recurrido son ilustrativas de dichos testimonios al punto de exponer lo inaudito de la versión del palo frente a las abolladuras del carro mostradas y lo inverosímil de la afirmación de que se detuvo y no vio nada ante las luces intermitentes e iluminación expuestas.

En definitiva, los cambios continuos que el recurrido creó en su narrativa, ensombrecidos ante la evidencia tramitada durante el juicio, así como por la información revelada en el *Informe presentencia*, delatan el contexto de evasión por simulación creado por él desde el inicio de los hechos e iluminan la única alternativa de sentido común: que sí tuvo plena conciencia de las condiciones reales de su accidente

y de la existencia de los heridos, a pesar de lo cual optó por abandonar la escena, a las personas involucradas y, con ellos, a la verdad de lo sucedido. Todo esto mediante la elucubración de versiones ficticias que fueron menoscabadas por su tejido mendaz, armado voluntariamente en distorsión de los hechos.

Esta travesía de falsedades, que formaron parte y contextualizaron la escena en que se produjo el delito, desvela la existencia de un problema de conducta y carácter del recurrido para cuya solución favorable, en interés de la protección social, requiere su reclusión parcial como parte de la extinción de la pena emitida por el Tribunal de Primera Instancia. Es decir, con su proceder durante la comisión del delito, el recurrido desplegó las circunstancias de las que solo cabe deducir la fisura de carácter y conducta a la que alude el requisito 2 de la *Ley de Sentencia Suspendida* como criterio *sine qua non* a considerar para prescribir la suspensión de la pena, aunque sea de forma parcial.

En función de lo dicho, quedó probado el primer error alegado por el Ministerio Público y determinamos que no se cumplió el requisito 2 de la *Ley de Sentencia Suspendida*, por lo cual el foro recurrido erró como cuestión de derecho al no valorarlo adecuadamente y suspender la totalidad de la *Sentencia* emitida, a pesar de que le estaba legalmente impedido. En consecuencia, procede modificar la misma para que, en su lugar, se emita una *Sentencia* fraccionada, en la que el recurrido cumpla 2 años recluido en la cárcel y el resto bajo el régimen de sentencia suspendida. Esta distribución de los períodos en reclusión y libertad a prueba valora adecuadamente la gravedad del delito junto a

sus consecuencias, la rehabilitación del convicto y la seguridad de la comunidad, a la vez que atiende las recomendaciones del *Informe presentencia*.

En función de lo determinado, me resulta inocuo abordar el segundo error alegado en el presente recurso. Este alega que el Tribunal recurrido abusó de su discreción al no emitir una sentencia fraccionada de conformidad con el *Informe presentencia*.

Por las consideraciones expuestas, concurro con expedir el auto de *certiorari* solicitado y con modificar la *Sentencia* objeto del presente recurso, a fin de que el señor Carlos Julián Maldonado Dávila sea ingresado en una institución carcelaria bajo el control del Departamento de Corrección y Rehabilitación por el término de 2 años, a cumplirse de conformidad con el estado de derecho vigente, al cabo de lo cual permanecerá en libertad condicional durante el resto del término de 10 años dispuesto en la *Sentencia* del Tribunal de Primera Instancia.

En San Juan, Puerto Rico, a 16 de mayo de 2024.


Carlos Candelaria Rosa