Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL II

| EL PUEBLO DE PUERTO RICO<br><br>Peticionario<br><br>v.<br><br>JAIME R. RAMIREZ FIGUEROA<br><br>Recurrido | KLCE202400550 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala de Mayagüez<br><br>Caso Núm. ISCR202300504<br><br>Sobre:<br>Art. 404 A Ley 4 |

Panel integrado por su presidente el Juez Bermúdez Torres, el Juez Adames Soto y la Juez Aldebol Mora

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 15 de julio de 2024.

I.

El 27 de junio de 2023 el Ministerio Público radicó acusación contra el Sr. Jaime R. Ramírez Figueroa por el delito grave de Posesión de la sustancia controlada conocida como "cocaína en su modalidad de *crack*".[1] Subsiguientemente, el 4 de diciembre de 2023, Ramírez Figueroa fue declarado culpable y sentenciado a cumplir tres (3) años bajo la pena alterna de restricción domiciliaria.

En la referida *Sentencia*, el Tribunal de Primera Instancia le impuso varias condiciones, incluyendo, no incurrir en conducta delictiva, no asociarse con personas reconocidas por su participación en actividades ilegales, y abstenerse de hacer uso de drogas narcóticas y/o estupefacientes. A su vez, como condición especial le requirió, entre otras cosas, que completara la evaluación ofrecida por la clínica APS, que se sometiera a tratamiento de ser necesario y que completara el mismo. Por último, se le requirió que

---

[1] Tipificado por el Art. 404 (a) de la Ley Núm. 4 de 23 de junio de 1971, conocida como Ley de Sustancias Controladas de Puerto Rico, Ley Núm. 4-1971. 24 LPRA § 2101 et seq.

Número Identificador

RES2024_____

observara fielmente las condiciones del convenio de restricción domiciliaria y las normas del programa de supervisión electrónica.

Así las cosas, el 20 de marzo de 2024, la Técnico de Servicios Sociopenal, Ginelle Báez Morales, rindió *Informe de Violación de Condiciones* (*Informe*), reportando que Ramírez Figueroa violó las condiciones de su *Sentencia*. Además, el *Informe* planteó que Ramírez Figueroa arrojó resultado positivo a marihuana y cocaína, sustancias a las cuales aceptó estar activamente usando. Así también, el *Informe* estableció que se le entregaron cuatro referidos a las clínicas de APS.[2]

A raíz de dicho *Informe*, el 2 de abril de 2024, el Ministerio Público presentó *Moción Solicitando Revocación de Libertad a Prueba*. Al día siguiente, el Foro primario emitió una *Resolución y Orden* en la cual determinó que existía causa probable para creer que Ramírez Figueroa había violado las condiciones de libertad a prueba. Consecuentemente, ordenó su arresto sin derecho a fianza y que fuese llevado ante su presencia para celebrarse la vista sumaria inicial el 11 de abril de 2024.

Celebrada la vista sumaria inicial el 19 de abril de 2024, el Foro primario determinó que no había causa en ese momento para continuar el procedimiento de revocar la sentencia suspendida. De esta manera, ordenó la excarcelación de Ramírez Figueroa bajo supervisión electrónica y señaló vista de seguimiento para el 14 de mayo de 2024. Aunque el mismo día de la vista el Ministerio Público solicitó, sin éxito, que el Foro juzgador reconsiderara su determinación, el 3 de mayo de 2024 insistió en su pedido mediante *Moción de Reconsideración*. Basó la misma en que presentó evidencia de que el acusado había violentado al menos cuatro de las

---

[2] A preguntas de la defensa en la vista celebrada el 19 de abril de 2024, la Técnico de Servicios Sociopenal admitió que uno de los referidos se le perdió a APS y no a Ramírez Figueroa.

condiciones impuestas en la *Sentencia,* las cuales no fueron impugnadas por la Defensa. El 6 de mayo de 2024 el Foro primario declaró No Ha Lugar la solicitud de *Reconsideración.*

Inconforme, el 20 de mayo de 2024, el Ministerio Público recurrió ante nos mediante *Petición de Certiorari.* Arguye que, "[e]l Tribunal de Primera Instancia erró y abusó de su discreción al determinar que no existía causa para *iniciar* el proceso de revocación de sentencia suspendida, a pesar de que se probó que el señor Ramírez Figueroa incumplió con *varias* de las condiciones que le fueron impuestas en su sentencia para poder cumplirla en restricción domiciliaria".

El 22 de mayo de 2024 concedimos un término de veinte (20) días a Ramírez Figueroa para mostrar causa por la cual no debíamos expedir y revocar el dictamen recurrido. En cumplimiento con ello, el 4 de junio de 2024, Ramírez Figueroa compareció mediante *Memorando al Amparo de la Regla 37 del Reglamento del Tribunal de Apelaciones en Oposición a que se Expida el Certiorari Solicitado.* Argumenta que el *Informe* fue escueto e impreciso, y que, entre los datos vertidos al Tribunal de Primera Instancia no se aportó un testigo con conocimiento personal de los hechos. Sostuvo que, se afectó su derecho a confrontarse con la prueba. Así también, añadió que el Foro *a quo* formuló su criterio responsablemente al hacerle preguntas a la Técnico de Servicios Sociopenal.

Con el beneficio de la comparecencia de las partes, el Derecho y la jurisprudencia aplicable, procedemos a resolver.

II.

El Art. 48 (b) del Código Penal de 2012, Ley 146 del 30 de julio de 2012,[3] establece la restricción domiciliaria como una de las penas

---

[3] Ley Núm. 146-2012, 33 LPRA § 5001 (b).

a imponerse a las personas naturales. A su vez, el Art. 50 de la Ley

Núm. 146-2012, delimita la referida pena como sigue:

> La pena de restricción domiciliaria consiste en la restricción de la libertad por el término de la sentencia, para ser cumplida en el domicilio de la persona o en otra residencia determinada por el tribunal, bajo las condiciones que propicien la rehabilitación social del convicto y no pongan en riesgo la seguridad de la comunidad.
>
> Esta pena es sustitutiva a la pena de reclusión señalada en el delito tipo, sujeta a las condiciones establecidas en esta sección. La misma puede combinarse con la pena de reclusión y otras penas sustitutivas de la misma. En el caso de que el juez combine esta pena con una o más de las penas sustitutivas de reclusión o con la pena de reclusión, deberá asegurarse de que el total de años de duración de las penas que combinó no exceda el término estatutario del delito tipo por el que resultó convicto.
>
> Al imponer esta pena se considerarán, entre otros, los siguientes factores: si la persona convicta está empleada o estudia, la condición de salud, la estabilidad del grupo familiar, el compromiso de que no volverá a delinquir, la posibilidad de rehabilitación, el riesgo y beneficio para la comunidad y la disponibilidad de recursos familiares o de otras personas para colaborar con la consecución de los objetivos de esta pena y con el cumplimiento de las condiciones impuestas.
>
> .     .     .     .     .     .     .     .
>
> Quien incumpla las condiciones de su restricción domiciliaria cumplirá reclusión por la totalidad de la sentencia, salvo que, en la vista de revocación, el Juez a su discreción podrá abonarle parte del tiempo ya cumplido.
>
> Esta pena no está disponible para personas convictas por delitos graves cuyo término de reclusión señalado en el tipo sea mayor de ocho (8) años, excepto se trate de un delito cometido por negligencia.
>
> No obstante, lo anterior, esta pena estará disponible para personas convictas por delitos graves, en los siguientes casos, certificados por prueba médica a satisfacción del tribunal:
>
>> (a) Personas convictas que sufran de una enfermedad terminal o condición incapacitante degenerativa, previa certificación médica a tales efectos.
>>
>> (b) Personas convictas que no puedan valerse por sí mismos.
>
> En cualquier otro caso, esta pena podrá ser aplicada a delitos graves, a juicio del tribunal, de conformidad con la Ley de Sentencias Suspendidas, según enmendada.[4]

---

[4] 33 LPRA § 5083.

Según Dora Nevares Muñiz, "[l]a última oración del artículo permite la aplicación de esta pena de restricción domiciliaria en un delito grave en el contexto de una libertad a prueba bajo la Ley de Sentencias Suspendidas. En ese caso se impone la libertad a prueba del Art. 51, que sigue, conforme la Ley de Sentencias Suspendidas y se le añade un componente de restricción domiciliaria".[5]

La aludida Ley de Sentencia Suspendida y Libertad a Prueba, Ley Núm. 259 del 3 de abril de 1946, según enmendada,[6] hace viable la implantación de la política pública enunciada en la Sec. 19 del Art. VI de la Constitución del Estado Libre Asociado, a los fines de "propender, dentro de los recursos disponibles, al tratamiento adecuado de los delincuentes para hacer posible su rehabilitación moral y social".[7] Por lo cual, dispone de un sistema que confiere al convicto la oportunidad de cumplir su sentencia o parte de ella en libertad, mientras observe buena conducta y cumpla las condiciones impuestas por el tribunal sentenciador.[8] El propósito rehabilitador de esta Ley, es convertir al convicto de delito en un miembro útil de la sociedad.[9] Ciertamente, el beneficio de la sentencia suspendida constituye un privilegio, por lo que su concesión reposa preponderantemente en el sano ejercicio de la discreción judicial.[10]

Al conceder este privilegio, la Ley de Sentencia Suspendida y Libertad a Prueba faculta al Tribunal de Primera Instancia a imponerle condiciones al convicto.[11] De igual forma, podrá revocar una sentencia suspendida y ordenar su ejecución para el

---

[5] D. Nevares Muñiz, *Código Penal de Puerto Rico Comentado por Dora Nevares Muñiz,* 4ta ed. rev., San Juan, Instituto para el Desarrollo del Derecho, Inc., 2019, pág. 102.

[6] 34 LPRA § 1026 *et seq.*

[7] *Pueblo* v. *Vega Vélez,* 125 DPR 188, 200 (1990).

[8] *Pueblo* v. *Vázquez Carrasquillo,* 174 DPR 40, 46 (2008); *Pueblo* v. *Negrón Caldero,* 157 DPR 413, 418 (2002); *Pueblo* v. *Zayas Rodríguez,* 147 DPR 530, 535 (1999); *Pueblo* v. *Molina Virola,* 141 DPR 713, 718 (1996).

[9] *Pueblo* v. *Texidor Seda,* 128 DPR 578, 582 (1991).

[10] *Pueblo,* 174 DPR, págs. 46-47; *Pueblo,* 147 DPR, pág. 536; *Pueblo,* 141 DPR pág. 719*; Pueblo* v. *Álvarez Maurás,* 100 DPR 620, 624 (1972); *Pueblo* v. *Rivera,* 79 DPR 880, 881 (1957).

[11] 34 LPRA § 1027a; *Pueblo,* 125 DPR, pág. 201.

cumplimiento en cárcel cuando un probando incumpla con las condiciones impuestas.[12] En tal sentido, el Art. 4 de dicho estatuto establece:

> El tribunal sentenciador podrá en cualquier momento en que a su juicio la libertad a prueba de una persona fuere incompatible con la debida seguridad de la comunidad o con el propósito de rehabilitación del delincuente, revocar dicha libertad y ordenar la reclusión de la persona por el período de tiempo completo señalado en la sentencia cuya ejecución suspendió para ordenar la libertad a prueba, sin abonarle a dicha persona el período de tiempo que estuvo en libertad a prueba. El tribunal sentenciador podrá en cualquier momento solicitar de la Administración de Corrección un informe periódico de la conducta de la persona puesta a prueba.
>
> Asimismo, el tribunal que hubiese resuelto conceder la libertad a prueba a una persona bajo la sec. 2404 (b)(1) del Título 24, parte de la "Ley de Sustancias Controladas" o bajo la Regla 247.1 de Procedimiento Criminal, Ap. II de este título, podrá dejar sin efecto la libertad a prueba y proceder a dicha sentencia cuando el probando hubiere incumplido una condición para dicha libertad.[13] [...]

En la dimensión procesal, en la revocación de sentencias suspendidas o libertad a prueba o probatoria, la norma es que, si bien el probando no es una persona enteramente libre, una vez el Estado le confiere el derecho limitado a estar en libertad, no puede cancelarlo en violación al debido proceso de ley.[14] Para revocar una sentencia suspendida o probatoria, el debido proceso de ley exige, al menos: 1) una vista preliminar para determinar si hay causa probable para creer que el probando ha violado las condiciones de su probatoria; y, 2) una vista final antes de la decisión definitiva

---

[12] *Pueblo,* 125 DPR, págs. 201-202.

[13] 34 LPRA § 1029 (Estamos conscientes de que dicha disposición hace referencia a la figura de libertad a prueba, la cual es distinguible de la restricción domiciliaria. No obstante, como mencionamos anteriormente, el Art. 50 de la Ley Núm. 146-2012, 33 LPRA § 5083, nos dirige a la Ley de Sentencia Suspendida en el caso de los delitos graves no excluidos del privilegio de la sentencia suspendida como sucede en el caso ante nos. A ello, le añadimos que la Ley de Sentencia Suspendida no provee un procedimiento independiente para revocar los efectos de la sentencia suspendida. En fin, entendemos que el Art. 4 de la Ley Núm. 259-1946 rige el procedimiento de revocación de la pena alterna de restricción domiciliaria.)

[14] *Álamo Romero* v. *Administración de Corrección,* 175 DPR 314, 332 (2009).

sobre si la probatoria será revocada.[15] Con el propósito de que el probando pueda preparase adecuadamente para la celebración de dicha vista y estar representado por abogado, la Ley exige que se le notifique por escrito las alegadas violaciones a la probatoria.[16]

Distinto a la vista inicial, en la que por su carácter informal y sumario solo se auscultan probabilidades,[17] en la vista final, además de contar con garantías constitucionales mínimas, tales como notificación y vista, el procedimiento estatutario para la revocación de la libertad a prueba requiere exista motivo justificado y dar al convicto la oportunidad de ser oído.[18] Por ello, la decisión del juez será por escrito y reflejará las determinaciones de hechos básicos, la prueba en que se basó y las razones que justifican la revocación.[19] En este punto, conviene destacar las siguientes expresiones del Tribunal Supremo referentes a la discreción del tribunal empleada en los procedimientos de libertad a prueba:

> [a]unque un tribunal en el ejercicio de su amplia discreción, bajo los términos de ley, puede conceder la libertad a prueba, hemos decidido que tal discreción no es absoluta. *Pueblo* v. *Sánchez González*, 90 DPR 197 (1964); *Pueblo* v. *Pérez Bernard*, 99 DP. 834 (1971). Menos puede ser arbitrario al revocarla. *Pueblo* v. *Vélez*, 76 DPR 142, 148 (1954).[20]

Para alcanzar el propósito antes expuesto es necesario que nuestro sistema de justicia criminal sea uno flexible y adaptable a

---

[15] Véase: E. Chiesa Aponte, <u>Derecho Procesal Penal de Puerto Rico y Estados Unidos</u>, Ed. Forum, 1991, Vol. I, pág. 519. Véase; también: *Martínez Torres* v. *Amaro Pérez*, 116 DPR 717, 725 (1985); *Gagnon* v. *Scarpelli*, 411 US 778, 786 (1973).

[16] 34 LPRA § 1029 (c) (1).

[17] *Martínez Torres*, 116 DPR, págs. 725-726 (en esta vista inicial, el probando tiene derecho a conocer las alegadas violaciones a las condiciones de la probatoria, la oportunidad de comparecer y presentar evidencia a su favor, así como confrontar a los testigos adversos).

[18] *Martínez Torres*, 116 DPR, pág. 726. (En dicha vista se le garantiza al probando al menos: a) una notificación escrita de las alegadas violaciones a la probatoria; b) un examen de la prueba en su contra; c) la oportunidad de ser oído personalmente y presentar testigos y evidencia documental a su favor; d) el derecho a confrontar y contrainterrogar los testigos adversos, a menos que el juzgador examinador determine por razones de seguridad del informante justa causa para no permitir tal confrontación; e) un juzgador neutral e independiente que puede ser uno solo o un cuerpo pluralista, aunque no el oficial sociopenal encargado de la suspensión del convicto; y, f) determinaciones escritas de los hechos hallados probados, así como de la evidencia en que la decisión se basó, y las razones para revocar la probatoria).

[19] *Íd.*, pág. 729.

[20] *Íd.*, pág. 723.

las necesidades de la sociedad puertorriqueña. Acorde con ello, en *Pueblo* v. *Vega Vélez*, 125 DPR 188, (1990) el Tribunal Supremo expresó que:

> [d]e una lectura integral de las disposiciones de la Ley de Sentencia Suspendida se desprende, con meridiana claridad, que **la discreción es parte o eje vital del esquema teórico de la misma.** La razón es sencilla: para lograr los objetivos de este sistema resulta **indispensable que los jueces de instancia tengan una gran flexibilidad, o discreción, en la administración de la misma.** El logro del objetivo de la rehabilitación del convicto que persigue este sistema **depende en gran medida de la facultad del juez de poder individualizar cada caso.**[21] [...]

Con este marco conceptual de fondo, atendamos el reclamo que nos hace el Ministerio Público.

III.

El Ministerio Público imputa al Tribunal de Primera Instancia abusar de su discreción al determinar que no existía causa para iniciar el proceso de revocación de sentencia suspendida, a pesar de que se probó que Ramírez Figueroa incumplió con varias de las condiciones que le fueron impuestas en su *Sentencia.* Veamos.

Son precisamente las particularidades de este caso, las que nos conminan a reconocer y apoyar la amplia flexibilidad y discreción que detenta el Foro primario en este tipo de procedimientos. Nuestro aval al proceder del Foro primario responde, principalmente, a: 1) la naturaleza del delito cometido por Ramírez Figueroa; 2) que este se encontraba al inicio de su proceso rehabilitación por el uso de sustancias controladas; 3) Ramírez Figueroa se encontraba cumpliendo satisfactoriamente con el horario de restricción domiciliaria y con el empleo; 4) la calidad de la prueba vertida en contra de Ramírez Figueroa.

En específico, enfatizamos en que a través de la *Sentencia* del Tribunal de Primera Instancia dictada el 4 de diciembre de 2023,

---

[21] *Pueblo,* 125 DPR, pág. 201 (Énfasis suplido).

Ramírez Figueroa quedó citado para vista de seguimiento el día 10 de junio de 2024. Al momento en que el Ministerio Público peticionó que se revocara la libertad a prueba, esto es, el 2 de abril de 2024, Ramírez Figueroa apenas se encontraba en el inicio de su proceso de rehabilitación. No tan solo eso, sino que, a preguntas de la Defensa, la Técnico de Servicios Sociopenal, admitió que Ramírez Figueroa estaba cumpliendo satisfactoriamente con el horario de restricción domiciliaria y con el empleo.

A la luz de estas circunstancias particulares e individualizadas de este caso, creemos que el Foro recurrido empleó responsablemente su discreción al determinar que en ese momento no había causa para continuar con los procedimientos de revocación luego de escuchar el testimonio vertido en la vista sumaria inicial. En un ejercicio prudente para formular un juicio debidamente fundamentado, dicho Foro realizó las siguientes preguntas a la Técnico de Servicios Sociopenal:

> **Juez:** Él tiene un problema de uso de sustancias. Obviamente los vecinos se han dado cuenta. Por eso, lo relacionan al uso de sustancias y está dando positivo porque tiene un problema. Todos están relacionados.
>
> **Testigo:** Un problema que no ha trabajado.
>
> **Juez:** Sí. Yo le pregunto, ¿es extraño que una persona que tiene una adicción le tenga una respuesta inmediata a trabajar esa adicción inmediatamente cuando ustedes se lo piden, de la primera, de la segunda vez?
>
> **Testigo:** No, no es extraño que ellos inicialmente se resistan y, posiblemente, verdad, en citas futuras sí, entonces, se centren y asistan al tratamiento.[22]

Estas respuestas permitieron que el Foro de instancia entendiera que todos los incumplimientos de Ramírez Figueroa estaban relacionados al uso de sustancias controladas, por lo que concluyó que, en ese momento de los procedimientos, no había causa para revocar la sentencia suspendida. Su actuación fue

---

[22] *Vista oral,* en 20:10-20:52, en Caso núm. ISCR202300504.

cónsona con el mandato del Tribunal Supremo en cuanto a que las leyes deben ser aplicadas conjuntamente al propósito social que las inspira, sin desvincularlas de la realidad y del problema humano que persiguen resolver.[23]

IV.

Por los fundamentos que anteceden, ***denegamos*** la expedición del recurso de *certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[23] *Pueblo*, 147 DPR, pág. 537.